CECILIA O. MILLER (Bar No. 211111)
cecilia.miller@procopio.com
JAMIE D. QUIENT (Bar No. 279525)
jamie.quient@procopio.com
PROCOPIO, CORY, HARGREAVES &
    SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA  92101
Telephone: 619.238.1900
Facsimile: 619.235.0398

Attorney for Plaintiff
Celerity Educational Group

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELERITY EDUCATIONAL GROUP, a California Nonprofit Public Benefit Corporation;<br><br>Plaintiffs,<br><br>v.<br><br>SCOTTSDALE INSURANCE COMPANY, an Ohio corporation,<br><br>Defendant. | Case No. 2:17-cv-3239<br><br>**COMPLAINT OF PLAINTIFF, CELERITY EDUCATIONAL GROUP**<br><br>**FOR**<br><br>**(1) DECLARATORY RELIEF (INSURED'S RIGHT TO INDEPENDENT COUNSEL (CAL. CIV CODE § 2860)); (2) BREACH OF CONTRACT; (3) SPECIFIC PERFORMANCE (INSURED'S RIGHT TO INDEPENDENT COUNSEL (CAL. CIV CODE § 2860)); AND (4) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (BAD FAITH).**<br><br>**DEMAND FOR JURY TRIAL** |

Comes now Plaintiff, Celerity Educational Group ("Celerity"), a California Nonprofit Public Benefit Corporation organized and operated under the laws of the State of California, by its attorneys Cecilia O. Miller and Jamie D. Quient of Procopio, Cory, Hargreaves and Savitch, LLP, and alleges for its Complaint as follows:

# INTRODUCTION

1.  This insurance coverage and bad faith action arises out of the denial of Defendant Scottsdale Insurance Company ("Scottsdale") to provide Celerity and its officers and directors (collectively, the "Insureds") an immediate, independent and unconflicted defense and fulfill its defense obligations with respect to three federal warrants issued in a matter captioned, <u>In the Matter of the Search of 3475 Meier Street, Los Angeles, CA 90066</u>, Case No. 17MJ0015, United States District Court, Central District of California and the related federal investigation ("Federal Investigation").

2.  As set forth in detail below, Scottsdale has declined to fulfil its defense obligations to Celerity and the Insureds under the Business and Management Indemnity Policy – Non-Profit Organizations, Policy Number EKS3192143/Certificate No. 3192143-026 (the "Policy") issued to Members of the California Charter Schools Joint Powers Authority, including Celerity.

3.  Specifically, Scottsdale declined Celerity's request for independent counsel and unilaterally appointed defense counsel to represent Celerity and the Insureds with respect to the Federal Investigation.  Scottsdale also denied Celerity's request to continue to be represented by its long-standing and current defense counsel rather than retain new counsel in the midst of the Federal Investigation.

4.  In declining to fulfill its defense obligations to Celerity and the Insureds under the Policy, Scottsdale acted unreasonably, continues to act unreasonably and has acted and continues to act with the knowledge that there is no reasonable basis for its wrongful misconduct.

5.  As a result, Celerity brings the instant action for: (1) Declaratory Relief (Insureds' Right to Independent Counsel pursuant to Cal. Civ. Code section 2860); (2) Breach of Contract; (3) Specific Performance (Insureds' Right to Independent Counsel pursuant to Cal. Civ. Code section 2860); and (4) Breach of the Implied Covenant of Good Faith and Fair Dealing (Bad Faith).

2

6.      Celerity demands a jury trial of all legal and factual issues so triable.

## PARTIES

7.      Plaintiff Celerity Educational Group ("Celerity") is a California nonprofit public benefit corporation organized and operated under the laws of the State of California with its principal place of business and doing business in the County of Los Angeles at all relevant times.  Celerity was organized and is operated to provide quality education in under-served communities in the Los Angeles area by creating and operating public charter schools and related programs that focus on the potential of every child.

8.      Celerity is informed and believes and thereon alleges that defendant Scottsdale Insurance Company ("Scottsdale") is, and at all times mentioned in this Complaint was, a corporation duly organized and existing under the laws of the State of Ohio.  Scottsdale is authorized to transact insurance business in the State of California including the issuance of insurance policies in California through surplus lines brokers and agents.  Scottsdale is on the List of Approved Surplus Lines Insurers maintained by the California Department of Insurance.

## JURISDICTION AND VENUE

9.      This Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1) as: (i) there is complete diversity of citizenship between Celerity and Scottsdale; and, (ii) the amount in controversy exceeds $75,000.

10.     These Claims for Relief arise under the Court's jurisdiction to hear, entertain and finally decide all matters and claims for relief arising under and pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332(a) because all claims for relief arise out of the same case or controversy as existing between Celerity and Scottsdale.

11.     Venue is proper in the Central District of California because a substantial part of the events giving rise to the claims for relief asserted herein occurred in Los Angeles, California, including Celerity's procurement of the Policy

3

and the Federal Investigation for which Celerity seeks coverage pursuant to the terms of the Policy.

**THE POLICY**

12.     Scottsdale issued the Policy for the period of July 1, 2016 to July 1, 2017 (the "Policy Period").  The available copy of the Policy in Celerity's possession is attached as Exhibit A.

13.     The Policy has a Limit of Liability of $1,000,000 for claims made against the Insureds under the IPO Coverage Section of the Policy, subject to a $2,500 Retention for each claim.  The Limits of Liability are not reduced by amounts incurred for "Costs, Charges and Expenses," which amounts shall be applied against the applicable retention amount.

14.     The Policy provides, in relevant part, the following insuring agreement under the Insured Person and Organization Coverage Section ("IPO Coverage Section"):

> "**Insurer** shall pay for the **Loss** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of a **Claim** first made against the **Insureds** during the **Policy Period** or, if elected, the **Discovery Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period**."  Policy, Insured Person and Organization Coverage Section, Section A (emphasis in original).

15.     The Policy defines "Claim" as, in relevant part, "a civil, administrative or regulatory proceeding or a formal governmental investigation against any **Insured** commenced by the filing of a notice of charges, investigative order or similar document."  Policy, Insured Person and Organization Coverage Section, Section B.1.c (emphasis in original).

16.     The Policy defines "Loss" in relevant part as "damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court, and **Costs, Charges and Expenses** incurred by any of the **Insureds**."  Policy, Insured Person

4

and Organization Coverage Section, Section B.7 (emphasis in original).

17.   The Policy defines "Costs, Charges, and Expenses" as "reasonable and necessary legal costs, charges, fees and expenses incurred by any of the **Insureds** in defending **Claims** and the premium for appeal, attachment or similar bonds arising out of covered judgments, but with no obligation to furnish such bonds and only for the amount of such judgment that is up to the applicable Limit of Liability."  Policy, Insured Person and Organization Coverage Section, Section B.3 (emphasis in original).

18.   The Policy defines "Insureds" to include "the **Organization** and the **Insured Persons**."   Policy, Insured Person and Organization Coverage Section, Section B.5 (emphasis in original).   The "Organization" is identified on the Certificate of Insurance as "Celerity Educational Group."   "Insured Persons" is defined to include "all persons who were, now are or shall become … a director, officer, trustee, volunteer, committee member or employee of the Organization." Policy, Insured Person and Organization Coverage Section, Section B4.a.

19.   The Policy defines "Wrongful Act" as, in relevant part, "any actual or alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act…allegedly committed or attempted by any **Insured**, while acting in their capacity as such, or any matter claimed against any **Insured Persons** solely by reason of his or her serving in such capacity." Policy, Insured Person and Organization Coverage Section, Section B.10 (emphasis in original).

20.   The Policy provides that "It shall be the duty of the **Insurer** and not the duty of the **Insureds** to defend any **Claim**.  Such duty shall exist even if any of the allegations are groundless, false or fraudulent."   Policy, Insured Person and Organization Coverage Section, Section F.1 (emphasis in original).

21.   The Policy further provides that "The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Costs, Charges and Expenses** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim**

without the prior written consent of the **Insurer**, such consent not to be unreasonably withheld."  Policy, Insured Person and Organization Coverage Section, Section F.3 (emphasis in original).

22.    On information and belief, at all pertinent times, the required premiums were paid with respect to the Policy and the Policy was in full force and effect at all relevant times related to the claims for relief set forth in this Complaint.

23.    Celerity has performed in a timely manner all conditions and covenants to be performed by Celerity under the Policy, or has by virtue of Scottsdale's conduct been excused from doing so.

## THE UNDERLYING FEDERAL INVESTIGATION

24.    On January 23, 2017, the United States Attorney's Office for the Central District of California sought and obtained the issuance of three search and seizure warrants (collectively, the "Warrants").  The Warrants sought to obtain evidence of violations of 18 U.S.C. § 641 (theft of government property or money); 18 U.S.C. § 666 (theft or bribery concerning programs receiving federal funds); 18 U.S.C. § 1031 (major fraud against the United States); 18 U.S.C. § 1341 (frauds and swindles); and 18 U.S.C. § 1957 (engaging in monetary transactions in property derived from specified unlawful activity).

25.    The Warrants authorized, *inter alia*, the search and seizure of bank, accounting, and corporate records of Celerity and the Insureds.

26.    The Warrants were executed by federal agents on January 25, 2017 at the following locations:  (1) 3457 Meier Street; (2) 2069 West Slauson Avenue; and (3) 3415 South Sepulveda Boulevard, Suites 570 and 580, in Los Angeles, California.  The Warrants remain under seal.

27.    Vielka McFarlane is the former CEO of Celerity who served from the schools' inception through March 31, 2015.  Her residence is located at 3457 Meier Street, one of the locations identified in the Warrants and subsequently searched.

/ / /

28.    Celerity's business headquarters are located at 2069 West Slauson Avenue, one of the locations identified in the Warrants and subsequently searched. Grace Canada, Ed. D., is the current CEO of Celerity and has served in that capacity since April 1, 2015.

29.    Celerity Global Development is a separate but related nonprofit that provides services to Celerity and whose charitable mission includes supporting Celerity.  Celerity Global Development's business headquarters are located at 3415 South Sepulveda Boulevard, Suites 570 and 580, one of the locations identified in the Warrants and subsequently searched.

30.    Celerity is informed and believes the Warrants and the ongoing Federal Investigation encompass the conduct of Celerity, the entity, as well as its officers and directors, the Insureds.

31.    By correspondence dated March 14, 2017 from the United States Attorney's Office for the Central District of California, the United States Department of Justice advised that "The government is currently investigating potential violations of 18 U.S.C. § 641 (theft of government property or money); 18 U.S.C. § 666 (theft or bribery concerning programs receiving federal funds); 18 U.S.C. § 1031 (major fraud against the United States); 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); and 18 U.S.C. § 1957 (engaging in monetary transactions in property derived from specified unlawful activity)."

32.    In the March 14, 2017 correspondence, the Department of Justice confirmed that Vielka McFarlane is "currently a target of the government's investigation."

33.    In the March 14, 2017 correspondence, the Department of Justice advised of additional officers and directors of Celerity who are "persons of interest."

34.    The Federal Investigation is ongoing and the prospect of an indictment is constant.  The United States Attorney's Office for the Central District of California is actively managing the investigation and pursuing investigative leads.

Los Angeles Unified School District ("LAUSD") and other interested government bodies and organizations have questioned whether Celerity should even operate schools.  Celerity requires, and will require, a consistent and vigorous defense by counsel knowledgeable as to its operations and the ramifications of the Federal Investigation.

## SCOTTSDALE HAS FAILED TO SATISFY ITS COVERAGE OBLIGATIONS TO CELERITY AND THE INSUREDS WITH RESPECT TO THE FEDERAL INVESTIGATION AND WARRANTS

35.   Celerity and the Insureds engaged their long-standing outside counsel, Maurice Suh, Esq. of Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), to provide a defense with respect to the Warrants and the Federal Investigation.

36.   Celerity immediately notified Scottsdale of the Warrants, provided a copy of same and requested a defense and indemnification from Scottsdale through its defense counsel at Gibson Dunn via letter dated February 7, 2017.

37.   In the February 7, 2017 letter, Mr. Suh, Celerity's defense counsel, advised that he represents Celerity along with its board members and current officials with respect to the Warrants and the Federal Investigation.  Mr. Suh also inquired if there were any specific procedures to follow for reimbursement of defense costs incurred with respect to the Warrants and Federal Investigation.

38.   By email dated that same day, Scottsdale communicated its intention to appoint defense attorneys from its panel.  Ms. Canada responded on behalf of Celerity and the Insureds by letter dated February 10, 2017.  In that February 10, 2017 letter, Celerity disagreed with Scottsdale's stated intention to appoint defense attorneys from its panel and again requested that Scottsdale appoint Gibson Dunn as Celerity's defense counsel.

39.   In the February 10, 2017 letter, Celerity explained that Gibson Dunn was already representing Celerity and its officers and directors.  Celerity further explained that Gibson Dunn had been counsel to Celerity since February 2015 and as

such it was in the best interests of Celerity that Gibson Dunn continue as counsel.

40.    In the February 10, 2017 correspondence, Celerity advised that:  "Mr. Suh and Gibson Dunn's representation will [be] the most effective, efficient, and cost effective option.  They have been counsel for [Celerity] since February 2015, and have intimate knowledge of the facts and legal arguments that will likely be at issue in the investigation.  Gibson Dunn has significant experience in defending clients in similar investigations.  In addition, as a result of their historical representation of [Celerity], their knowledge of witnesses and procedures, and defense counsel's deep familiarity with the working of the charter school, Gibson Dunn is the most logical and economical choice for appointment as counsel."

41.    On Friday, March 3, 2017, Emil Soskin, Esq., on behalf of Scottsdale, requested voluminous materials from Celerity, including but not limited to materials related to "any prior government investigation," but Scottsdale still did not provide a coverage determination or consent to Gibson Dunn as defense counsel.  In a subsequent email of that same date, Scottsdale wrote:  "Scottsdale is continuing to investigate your request to have Gibson Dunn handle this matter."

42.    On Tuesday, March 7, 2017, less than two business days after making its document request, Emil Soskin, Esq. emailed the following on behalf of Scottsdale:  "I am following up on my prior email.  As I have not received a response from you since my email from last week, Scottsdale will be assigning its choice of counsel to defend the Insureds and maintains that it does not consent to Gibson Dunn defending the Insureds.  There is no coverage available for any Costs, Charges or Expenses incurred by the Insureds without Scottsdale's consent."

43.    Scottsdale's March 7, 2017 email did not contain a coverage determination and did not provide an explanation for Scottsdale's refusal to consent to Gibson Dunn as defense counsel with respect to the Warrants and the Federal Investigation.

/ / /

44.     Insurance coverage counsel retained by Celerity wrote to Scottsdale on March 11, 2017 seeking a formal coverage determination, expressing that Scottsdale's unilateral appointment of defense counsel is contrary to its obligations under the Policy, and stating that substitution of counsel risks significant prejudice to Celerity's response to the Federal Investigation and the Warrants.

45.     Celerity's coverage counsel further explained in the March 11, 2017 correspondence that, in addition to defending Celerity with respect to the Federal Investigation, Mr. Suh had represented Celerity for over two years and had gained valuable institutional knowledge regarding Celerity's charter school operations and the facts and circumstances at issue in the Warrants.  By contrast, the defense counsel proposed by Scottsdale had no cited experience with charter schools.

46.     Experience with charter schools and the practices and policies of LAUSD are critical components of a successful defense to this case, and moreover, were critical components with respect to the ability to immediately respond to the execution of the Federal Warrants.

47.     In its March 11, 2017 letter, Celerity's coverage counsel explained that: "Rather than provide a formal, substantive response or specific objections, Scottsdale advised in an email that it wished to appoint panel counsel.  In response to Scottsdale's email, [Celerity] explained in detail in a February 10, 2017 letter how continued representation by Gibson Dunn was the most effective and efficient method of successfully addressing the Federal Warrants.  [Celerity] incorporates that correspondence in its entirety.  Once again Scottsdale did not provide any formal response or objections justifying an appointment, instead Scottsdale simply sent an email nearly a month later unilaterally appointing counsel.  In stark contrast to Scottsdale's conduct, the Scottsdale Policy expressly provides that Scottsdale's consent 'not be unreasonably withheld.'  Policy, Insured Person and Organization Coverage Section, Section F.3."

/ / /

CASE NO. 2:17-CV-3239

48.     Celerity's coverage counsel further expressed that a change in counsel at this juncture of the proceedings could significantly prejudice Celerity's position and prospects for a successful resolution of the issues raised by the Federal Investigation.   Celerity's coverage counsel also stressed that particular deference should be afforded to Celerity's choice of counsel because the matters at issue include the potential for a criminal conviction and thus are not simply a matter of preference or cost because the Insureds' very liberty and reputational interests are implicated.

49.     Scottsdale's coverage counsel responded to Celerity's request for a formal coverage determination by correspondence dated March 14, 2017.

50.     Scottsdale's March 14, 2017 correspondence affirmed Scottsdale's duty to defend Celerity and its officers and directors with respect to the Federal Investigation and Warrants pursuant to Section F.1. of the Policy's IPO Coverage Section.   Scottsdale's March 14, 2017 correspondence is expressly characterized, however, as a "preliminary analysis of coverage for the Warrants and government investigation."   Scottsdale further characterized the reservation of rights provided in the March 14, 2017 correspondence as "limited," but provided no explanation regarding the "limited" nature of the reservation of rights.

51.     Scottsdale's March 14, 2017 reservation of rights raised two potential coverage limitations related to the Policy's definition of "Loss" and the Policy's aggregate limits.

52.     Scottsdale's reservation of rights was silent, however, with respect to multiple other exclusions in the Policy, including exclusions regarding dishonest, deliberately fraudulent or criminal act" and the "gaining of any profit, remuneration or financial advantage."   The March 14, 2017 reservation of rights was also silent regarding California Insurance Code section 533 ("Section 533"), which prohibits indemnification of willful acts by an insured.   A reservation regarding these coverage limitations, or others which remain unaddressed by Scottsdale, could create a conflict

of interest between defense counsel appointed by Scottsdale and the Insureds, thereby triggering the Insureds' right to independent counsel under California Civil Code section 2860 ("Section 2860").

53.     Based on its "limited" reservation of rights and "preliminary coverage discussion," Scottsdale again refused to consent to Celerity's choice of defense counsel.    Scottsdale's March 14, 2017 correspondence did not provide any justification or basis for declining to consent to Gibson Dunn as defense counsel. Scottsdale's March 14, 2017 correspondence simply concluded that the March 14, 2017 reservation of rights, which was "preliminary" and "limited," did not present a conflict of interest triggering the Insureds' right to independent counsel under Section 2860.

54.     By email dated March 15, 2017, Celerity disputed Scottsdale's unilateral appointment of counsel.    Celerity also advised Scottsdale regarding the Department of Justice's identification of additional persons of interest.    Celerity requested a defense of these additional Insureds from Scottsdale through Gibson Dunn.

55.     Scottsdale responded in an email dated March 24, 2017.    In that correspondence, Scottsdale again refused to consent to Gibson Dunn's defense of any Insureds.    Scottsdale further advised that it "will not be responsible for any Gibson Dunn defense costs as Scottsdale has not consented to such fees."

56.     To date, Celerity has incurred in excess of $75,000 in defense of the Federal Investigation and the Warrants through its defense counsel at Gibson Dunn. Scottsdale has not provided any reimbursement toward these amounts and contends it is not even responsible for fees incurred prior to its March 7, 2017 identification of panel counsel it seeks to appoint as defense counsel.

57.     Scottsdale's unreasonable refusal to consent to Celerity's choice of defense counsel and its request for independent counsel is contrary to its obligations under the Policy to provide its Insureds with an immediate, complete and

unconflicted defense. Scottsdale's "limited" reservation of rights based on a "preliminary analysis of coverage" and omission to address all Policy exclusions and Section 533 creates an actual conflict of interest with respect to a defense of the Federal Investigation and Warrant through panel counsel appointed by Scottsdale. As such, it allows Scottsdale to dictate the day when the Insureds' right to counsel might arise in the future. This "wait and see" approach is highly prejudicial as developments of facts and circumstances in defense of the Federal Investigation and the Warrants within the control of insurer-appointed panel counsel may have transpired in the interim to the detriment of the Insureds. A transition of defense counsel at this juncture, given the proceedings to date and current defense counsel's institutional knowledge of the Insureds, is harmful. A transition of the defense potentially months in the future would be, necessarily, devastating.

58. Scottsdale's conduct is a bad faith insurance practice which has jeopardized Celerity's defense of the Federal Investigation and the Warrants as it has caused Celerity to incur and expend its own monies, which now exceed $75,000, to promptly and meaningfully respond to these proceedings while Scottsdale refuses to provide any reimbursement toward these fees or provide a basis for refusing to consent to Celerity's choice of its defense counsel. Accordingly, Scottsdale's conduct has caused Celerity to suffer damages, including but not limited to the risk of harm to Celerity's defense and resolution of the Federal Investigation and Warrants, and prejudgment interest for the opportunity cost of the substantial amounts which Celerity has been required to pay.

59. Scottsdale's non-payment and refusal to provide Celerity and the Insureds with independent and unconflicted defense counsel to respond to the Federal Investigation and the Warrants have undermined, and will continue to undermine, Celerity's defense of those proceedings as well as related developments such as with the LAUSD.

/ / /

13

60.     Scottsdale has engaged in conduct that is designed to save Scottsdale's money in the short-term, while forcing Celerity, a non-profit, to direct substantial funds from its charter school operations to funding its own, unconflicted defense of the Federal Investigation and Warrants on an ongoing basis.  Scottsdale is pursuing a course of action that protects and profits the insurer at the expense of its insured.

61.     Scottsdale accepted premiums for the Policy in return for the expectation by Celerity and by all of those insured under the Policy that Scottsdale would provide an immediate, complete and unconflicted defense, without delay, knowingly creating such expectations and accepting premiums in return therefor. Celerity and the Insureds reasonably expected that Scottsdale would provide monies toward a timely, full and adequate defense of all claims and on behalf of Celerity and those insured under the Policy with respect to the Federal Investigation and Warrants.

62.     Accordingly, it is necessary for Celerity to commence this action seeking a declaration from the Court that Celerity and the Insureds have a statutory right to independent and unconflicted counsel and a duty to reimburse Celerity for all defense fees and costs it has incurred, and will incur, as a result of the Federal Investigation and Warrants.

## **FIRST CAUSE OF ACTION**

### **For Declaratory Relief Regarding Celerity's Right to Independent Counsel**
### **(Cal. Civ. Code § 2860)**

63.     Celerity incorporates by reference each and every allegation contained in each paragraph above and below as though the same were set forth in full herein.

64.     By virtue of Scottsdale's unilateral appointment of panel counsel and unwillingness to provide Celerity and the Insureds with independent and unconflicted counsel, in spite of the actual conflict of interest that would arise if Celerity is represented by Scottsdale's selected defense counsel with respect to the Federal Investigation and the Warrants, an actual controversy exists between Celerity

and Scottsdale regarding Celerity's right to independent counsel under the Policy.

65. Under the Policy, Scottsdale is required to "pay for the **Loss** which the **Insureds** have become legally obligated to pay by reason of a **Claim** first made against the Insureds during the **Policy Period**…for any **Wrongful Act** taking place prior to the end of the **Policy Period**."

66. The Policy defines "Claim" as, in relevant part, "a civil, administrative or regulatory proceeding or a formal governmental investigation against any **Insured** commenced by the filing of a notice of charges, investigative order or similar document."

67. The Policy defines "Wrongful Act" as, in relevant part, "any actual or alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act…allegedly committed or attempted by any Insured, while acting in their capacity as such, or any matter claimed against any Insured Persons solely by reason of his or her serving in such capacity."

68. The Federal Investigation is a "formal government investigation" against Celerity, which was commenced by the filing of the Warrants. As such, the Federal Investigation falls within the Policy coverage for a "Claim."

69. The Policy defines "Loss" as "damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court, and **Costs, Charges and Expenses** incurred by any of the **Insureds**."

70. The Warrants sought to obtain evidence of, *inter alia*, violations of 18 U.S.C. § 641 (theft of government property or money); 18 U.S.C. § 666 (theft or bribery concerning programs receiving federal funds); 18 U.S.C. § 1031 (major fraud against the United States); 18 U.S.C. § 1341 (frauds and swindels); and 18 U.S.C. § 1957 (engaging in monetary transactions in property derived from specified unlawful activity).

71. The basis for the Federal Investigation, as set forth in the Warrants, includes "Wrongful Acts" as defined in the Policy.

15

72.    The Policy defines "Costs, Charges, and Expenses" as "reasonable and necessary legal costs, charges, fees and expenses incurred by any of the **Insureds** in defending **Claims** and the premium for appeal, attachment or similar bonds arising out of covered judgments, but with no obligation to furnish such bonds and only for the amount of such judgment that is up to the applicable Limit of Liability."

73.    Celerity has incurred necessary legal costs, charges, fees and expenses in defending the Claims and has thus suffered a "Loss" as defined by the Policy.

74.    Celerity provided timely notice to Scottsdale of the Federal Investigation and Warrants during the Policy Period.

75.    The allegations of the Federal Investigation and Warrants thus fall within the scope of the terms and coverage provisions of the Policy, which obligates Scottsdale to provide Celerity a defense with respect to these proceedings. Accordingly, Scottsdale had and continues to have an immediate duty to defend Celerity and the Insureds with respect to the Federal Investigation and the Warrants. Consistent with that obligation, Scottsdale acknowledged a defense obligation, but required that the defense be provided through panel counsel selected by the insurer.

76.    Pursuant to Section 2860, if an insurer reserves rights as to issues of coverage for which the development of facts are within the control of counsel to be appointed by the insurer, the insured will be entitled to select independent counsel to provide a defense of the insured with such counsel reimbursed by the insurer.  Cal. Civ. Code § 2860 (b) ("…when an insurer reserves its right on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insured for the defense of the claim, a conflict of interest may exist.").

77.    Scottsdale's failure to address all potential exclusions and limitations on coverage, and issuing only a "preliminary" coverage analysis and "limited reservation of rights," creates an actual conflict of interest between the panel counsel appointed by Scottsdale and Celerity because such counsel will have the ability to influence findings in the Federal Investigation and Warrants that will bear on the

16

application of such limitations and exclusions from coverage.

78.     Substitution of counsel at this juncture risks significant prejudice to Celerity's response to the Federal Investigation.  Specifically, Maurice Suh of Gibson Dunn has been defending Celerity with respect to the Federal Investigation since January 2017 and has detailed knowledge of the facts and circumstances related to that investigation.

79.     Mr. Suh is also assisting Celerity in preparing for a hearing before the California State Board of Education regarding the renewal appeals of two of Celerity's charters, where the California Department of Education has raised questions about the Federal Investigation.  Mr. Suh's representation with respect to Celerity's charter renewals is inextricably connected to the Federal Investigation and it is important that all statements and actions related to the renewal appeals are consistent with statements and representations made with respect to the Federal Investigation.  Any inconsistencies or inability to answer the Department of Education's questions could have very serious implications for Celerity and could be enterprise-threatening.

80.     Moreover, Mr. Suh has represented Celerity for over two years and has gained valuable institutional knowledge regarding Celerity's charter school operations and the facts and circumstances at issue in the Federal Investigation.  He has extensive experience with LAUSD and its practices and policies with respect to charter schools, which is a critical component of the defense of the allegations at issue in the Federal Investigation.  By contrast, the defense counsel proposed by Scottsdale has no cited experience with charter schools and no knowledge of Celerity's charter school operations in particular.

81.     A change in counsel at this juncture of the proceedings could significantly prejudice Celerity's position and prospects for a successful resolution of the issues raised by the Federal Investigation and the Warrants.  Moreover, particular deference should be afforded to Celerity's choice of counsel because the matters at

1 issue include the potential for a criminal conviction and thus are not simply a matter
2 of preference or cost because the Insureds' very liberty and reputational interests are
3 implicated.

4      82.   Celerity advised Scottsdale of the potential conflict of interest of the
5 appointed counsel and the prejudice the Insureds would suffer by a change of
6 counsel at this juncture.

7      83.   Nevertheless, Scottsdale has persisted in its refusal to appoint
8 independent counsel to represent Celerity and the Insureds and in denying
9 independent counsel.

10      84.   Celerity and those acting on its behalf took, and continue to take,
11 reasonable and appropriate responsive actions in defense of the claims asserted
12 against the Insureds in the Federal Investigation and the Warrants, and have incurred,
13 and continue to incur, fees, costs, expenses and liabilities in defense of those claims,
14 the exact amount of which has yet to be ascertained but which presently exceeds
15 $75,000.

16      85.   Celerity desires a judicial determination and declaration that the
17 Insureds are entitled to independent, unconflicted counsel to represent the Insureds
18 with respect to the Federal Investigation and the Warrants.  Celerity further desires a
19 declaration of its right to reimbursement of the defense costs it has incurred, and will
20 incur, as a result of the Federal Investigation and Warrants.

21      86.   A judicial declaration of Celerity's right to independent counsel to
22 represent it with respect to the Federal Investigation and the Warrants, and Celerity's
23 right to reimbursement of the fees and costs incurred in this independent and
24 unconflicted defense are necessary and appropriate at this time because Scottsdale
25 presently continues to deny Celerity's request for independent and unconflicted
26 counsel.  Scottsdale's refusal is causing prejudice to Celerity's response to the
27 Federal Investigation and Warrants as Celerity independently shoulders the extensive
28 fees and costs required for this independent and unconflicted defense.  Celerity has

also been forced to use funds that could otherwise be used in its public charter school classrooms to fund its defense.

## SECOND CAUSE OF ACTION

### Breach of Contract as to Celerity's Right to Independent Counsel

87.     Celerity incorporates by reference each and every allegation contained in each paragraph above and below as though the same were set forth in full herein.

88.     Under the Policy, Scottsdale is required to "pay for the **Loss** which the **Insureds** have become legally obligated to pay by reason of a **Claim** first made against the Insureds during the **Policy Period**…for any **Wrongful Act** taking place prior to the end of the **Policy Period**."

89.     The Policy defines "Claim" as, in relevant part, "a civil, administrative or regulatory proceeding or a formal governmental investigation against any **Insured** commenced by the filing of a notice of charges, investigative order or similar document."

90.     The Policy defines "Wrongful Act" as, in relevant part, "any actual or alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act…allegedly committed or attempted by any Insured, while acting in their capacity as such, or any matter claimed against any Insured Persons solely by reason of his or her serving in such capacity."

91.     The Federal Investigation is a "formal government investigation" against Celerity, which was commenced by the filing of the Warrants.  As such, the Federal Investigation falls within the Policy coverage for a "Claim."

92.     The Policy defines "Loss" as "damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court, and **Costs, Charges and Expenses** incurred by any of the **Insureds**."

93.     The Warrants seek to obtain evidence of, *inter alia*, violations of 18 U.S.C. § 641 (theft of government property or money); 18 U.S.C. § 666 (theft or bribery concerning programs receiving federal funds); 18 U.S.C. § 1031 (major fraud

against the United States); 18 U.S.C. § 1341 (frauds and swindels); 18 U.S.C. § 1957 (engaging in monetary transactions in property derived from specified unlawful activity). The basis for the Federal Investigation as set forth in the Warrants includes "wrongful acts" as defined in the Policy.

94. The Policy defines "Costs, Charges, and Expenses" as "reasonable and necessary legal costs, charges, fees and expenses incurred by any of the **Insureds** in defending **Claims** and the premium for appeal, attachment or similar bonds arising out of covered judgments, but with no obligation to furnish such bonds and only for the amount of such judgment that is up to the applicable Limit of Liability.

95. Celerity has incurred necessary legal costs, charges, fees and expenses in defending the Claims and has thus suffered a "Loss" as defined by the Policy.

96. Celerity provided timely notice to Scottsdale of the Federal Investigation and Warrants during the Policy Period.

97. The allegations of the Federal Investigation and Warrants thus fall within the scope of the terms and coverage provisions of the Policy, which obligates Scottsdale to provide Celerity and the Insureds a defense with respect to the Federal Investigation. Accordingly, Scottsdale had and continues to have an immediate duty to defend Celerity and the Insureds with respect to the Federal Investigation and Warrants. Consistent with that obligation, Scottsdale acknowledged a defense obligation, but required that the defense be provided through panel counsel selected by the insurer.

98. Pursuant to Section 2860, if an insurer reserves rights as to issues of coverage for which the development of facts are within the control of counsel to be appointed by the insurer, the insured will be entitled to select independent counsel to provide a defense of the insured with such counsel reimbursed by the insurer. Cal. Civ. Code § 2860 (b) ("…when an insurer reserves its right on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insured for the defense of the claim, a conflict of interest may exist.").

CASE NO. 2:17-CV-3239

99.    Scottsdale's failure to address all potential exclusions and limitations on coverage, and issuing only a "preliminary" coverage analysis and "limited reservation of rights," creates an actual conflict of interest between Scottsdale's appointed panel counsel and Celerity because such counsel will have the ability to influence findings in the Federal Investigation and Warrants that will bear on the application of such limitations and exclusions from coverage.

100.    Substitution of counsel at this juncture risks significant prejudice to Celerity's response to the Federal Investigation.   Specifically, Maurice Suh of Gibson Dunn has been defending Celerity with respect to the Federal Investigation since January 2017 and has detailed knowledge of the facts and circumstances related to that investigation.

101.    Scottsdale has repeatedly breached, and continues to breach its contractual obligations under the Policy to defend Celerity and the Insureds in the Federal Investigation by declining to provide Celerity and the Insureds with independent and unconflicted defense counsel; by initially failing to provide any coverage position as to the Federal Investigation, by seeking excessive, burdensome and unreasonable information not pertinent to the Federal Investigation; and by declining to reimburse any amounts incurred in Celerity's defense of the Federal Investigation and Warrants—including amounts incurred before Scottsdale notified Celerity of its appointment of defense counsel.   Scottsdale's conduct, including Scottsdale's refusal to provide Celerity and the Insureds with independent and unconflicted defense counsel with respect to the Federal Investigation and Warrants risks harm to Celerity's defense in those proceedings.

102.    As a result of Scottsdale's breach, Celerity has been forced to fund on its own the defense with respect to the Federal Investigation, retain separate coverage counsel, and carry the entire liability of the defense of those proceedings, which in turn has required Celerity to divert funds from its charter school operations.   Celerity and the Insureds reasonably expected that Scottsdale would pay such defense fees in

exchange for premiums paid.  To date, Celerity has incurred in excess of $75,000 in defense of the Federal Investigation and Warrants.  Scottsdale has not made any payment toward these defense costs.

103.   Scottsdale's actions and inactions caused, and continue to cause, Celerity to suffer damages, including monetary damages, injury and loss in an amount in excess of the jurisdictional minimums of this Court.

104.   Scottsdale's refusal to provide Celerity and the Insureds with independent and unconflicted counsel denies the benefits contracted for under the Policy because the Insureds are deprived of the bargained for insurer-funded defense during the pendency of the Federal Investigation and Warrants.

105.   On information and belief, Celerity complied with all conditions of the Policy, or has by virtue of Scottsdale's misconduct been excused from doing so.

106.   Accordingly, as a proximate result of Scottsdale's breach of its contractual obligations under the Policy, Celerity has suffered consequential damages, including but not limited to interest, the cost of funds, litigation expenses, attorneys' fees and costs, which Celerity has incurred, and will continue to incur, plus interest thereon, the exact amount of which has yet to be ascertained, but presently exceeds $75,000.

## THIRD CAUSE OF ACTION

### Specific Performance as to Celerity's Right to Independent Counsel

107.   Celerity incorporates by reference each and every allegation contained in each paragraph above and below as though the same were set forth in full herein.

108.   As discussed in paragraphs 12-21 above, Celerity is insured by Scottsdale under a specifically enforceable contract sufficiently certain in its terms, i.e., the Policy.  See Ex. A.

109.   At all pertinent times, the required premiums were paid to Scottsdale by Celerity with respect to the Policy, and the Policy was, and is, in full force and effect.  Thus, Scottsdale received adequate consideration for the Policy.

110.   The provisions of the Policy and California law requiring Scottsdale to provide Celerity an independent and unconflicted defense with respect to the Federal Investigation and Warrants are just and reasonable.

111.   Since tender, Celerity repeatedly requested that Scottsdale consent to its choice of independent, unconflicted counsel.  Scottsdale has repeatedly denied that Celerity and the Insureds are entitled to independent counsel.

112.   In order to avoid the prejudice of conflicted counsel, Celerity has continued to be represented by Gibson Dunn with respect to the Federal Investigation and Warrants at its own expense to protect its interests in those proceedings.  Defense costs incurred in defense of the Federal Investigation and Warrants to date exceed $75,000.  Scottsdale has not made any payment toward these defense costs and has denied any obligation toward reimbursement.

113.   Scottsdale has thus breached its contractual obligations to Celerity under the Policy by failing to provide Celerity an unconflicted defense with respect to the Federal Investigation and Warrants.

114.   If Scottsdale does not immediately consent to Celerity's choice of unconflicted and independent counsel, Celerity and the Insureds will be irreparably harmed.   The Federal Investigation of Celerity and the Insureds is ongoing.  Therefore, Celerity has no adequate remedy at law in that it will be deprived of the benefits Scottsdale promised to provide by accepting Celerity's premiums, i.e., to provide an unconflicted and independent defense in federal investigations.

115.   To date, the defense payments incurred by Celerity in defense of the Federal Investigation and Warrants exceed $75,000, exclusive of interest accruing thereon.  The Federal Investigation is ongoing and it is imperative that the Insureds are permitted their choice of unconflicted and independent defense counsel and be reimbursed for defense fees incurred to date to avoid any negative impact to Celerity's defense.  As a result of Scottsdale's continuing refusal to permit Celerity to select independent and unconflicted defense counsel, Celerity has been forced to

independently and exclusively shoulder these liabilities, resulting in financial hardship to Celerity, diversion of resources from Celerity's public charter school operations and the risk of prejudice to the defense of the Federal Investigation and Warrants.

## FOURTH CAUSE OF ACTION

**Breach of the Implied Covenant of Good Faith and Fair Dealing (Bad Faith)**

116.   Celerity incorporates by reference each and every allegation contained in each paragraph above and below as though the same were set forth in full herein.

117.   Scottsdale has breached its duty of good faith and fair dealing owed to Celerity and the Insureds in at least the following respects:

(a)   Applying unreasonable interpretations of the Policy to deny Celerity's request for independent and unconflicted counsel;

(b)   Failing to acknowledge and timely respond to Celerity's inquiries and requests for coverage positions in direct violation of California's Unfair Insurance Practices Act and regulations promulgated thereunder, including but not limited to, California Insurance Code section 790.03 (h) (2) ("Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies");

(c)   Making unreasonable demands and seeking irrelevant information concerning matters wholly unrelated to Scottsdale's defense obligations with respect to the Federal Investigation and Warrants, including materials related to "any prior government investigation," to both harass the Insureds and delay the Insureds' receipt of coverage benefits in direct violation of California's Unfair Insurance Practices Act and regulations promulgated thereunder, including California Code of Regulations, Title 10, Chapter 5, Subchapter 7.5, Section 2695.7(d) ("No insurer shall persist in seeking information not reasonably required for or material to the resolution of a claim dispute.");

(d)   Refusing to make any reimbursement toward the defense fees and costs

24

incurred by Celerity through it defense counsel, including fees incurred from tender through Scottsdale's March 7, 2017 notification that it would appoint panel counsel to defend the Federal Investigation and Warrants; and,

(e)     Unreasonably contending that it had not provided consent to Celerity's incurring of defense fees and costs through Gibson Dunn even though Celerity had advised of its retention of Gibson Dunn on February 7, 2017, had specifically requested any requirements or procedures to obtain reimbursement of same and Scottsdale did not refuse to provide consent until March 7, 2017.

118.   In declining and delaying to fulfill its defense obligations to Celerity under the Policy, Scottsdale acted unreasonably and with the knowledge that there was no reasonable basis for its misconduct and that all of Scottsdale's actions or inactions would proximately injure, damage and create loss and harm to Celerity.

119.   Scottsdale tortiously breached the duty of good faith and fair dealing owed to Celerity and the Insureds because Scottsdale's actions were conscious and deliberate and unfairly frustrated and disappointed Celerity's reasonable expectations of Scottsdale as Celerity's insurer.

120.   In particular, Scottsdale made a conscious and deliberate decision: (i) to deny Celerity's request for independent and unconflicted counsel to defend the Insureds with respect to the Federal Investigation and Warrants despite the California statutory and case law obligating Scottsdale to do so; (ii) to request irrelevant information from Celerity despite the efforts and cost associated with same; (iii) to decline to respond to communications from its insured for weeks at a time; and (iv) to refuse to reimburse any defense fees and costs incurred by Celerity through its defense counsel—including fees incurred prior to Scottsdale's notification that it would appoint panel counsel and decline to consent to Gibson Dunn.

121.  Celerity has been harmed and will continue to be harmed by Scottsdale's willful, malicious and egregious strategies of delay, obfuscation and intentional misconduct by, among other things, being forced to file the instant case

during the pendency of the Federal Investigation thereby requiring Celerity to simultaneously defend against the Federal Investigation while needing to prosecute the instant declaratory relief action.

122. As a proximate result of the aforementioned wrongful conduct of Scottsdale, Celerity has sustained damages and out-of-pocket expenses, including, but not limited to, attorneys' fees attributable to Celerity's efforts to obtain the full and adequate defense coverage provided under the Policy and California law.

123. Scottsdale tortiously and wrongfully has withheld from Celerity benefits due under the Policy, and consistent with the holding of *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985), Celerity is therefore entitled to recoup reasonable attorneys' fees and legal costs expended to recover such benefits.

124. Scottsdale's conduct described herein was done with a conscious disregard of Celerity's rights and with the intent to vex, injure, or annoy Celerity, such as to constitute oppression, fraud or malice under California Civil Code §3294, entitling Celerity to punitive and exemplary damages in an amount appropriate to punish or set an example of Scottsdale.

## **PRAYER FOR RELIEF**

Celerity prays for judgment against Scottsdale as follows:

1.   <u>As to the First Claim for Relief</u>:

For a declaration that the Policy and California law required and requires Scottsdale to provide Celerity and the Insureds with its choice of independent and unconflicted counsel in defense of the Federal Investigation and Warrants, and Celerity's right to reimbursement of post-tender legal fees and costs incurred in defense of those proceedings through the independent and unconflcited defense counsel selected by Celerity.

/ / /

/ / /

/ / /

2.   <u>As to the Second Claim for Relief:</u>

    a.   For general damages according to proof of breach of the Policy, the exact amount of which has yet to be ascertained but which amount at the time of the filing of this Complaint is at least $75,000;

    b.   For pre- and post-judgment interest thereon at the legal rate until paid;

    c.   For loss attributable to a diminution in the purchasing power of the dollar that has occurred since the date Celerity sustained damage; and

    d.   For attorneys' fees, costs of suit and such other and further relief as may make Celerity whole.

3.   <u>As to the Third Claim for Relief:</u>

    For specific performance of Scottsdale's defense duties owed to Celerity and the Insureds in defense of the Federal Investigation and Warrants under the Policy, including providing the Insureds its choice of independent and unconflicted defense counsel with respect to the Federal Investigation and Warrants, and reimbursement of post-tender legal fees and costs incurred in defense of those proceedings.

4.   <u>As to the Fourth Claim for Relief:</u>

    a.   For general damages according to proof of Scottsdale' bad faith;

    b.   For attorneys' fees and other legal expenses attributable to the efforts of Celerity to obtain a full and adequate defense with respect to the federal investigation;

    c.   For punitive and exemplary damages against Scottsdale, according to proof; and

    d.   For such other and further relief as may make Celerity whole.

5.   <u>For all claims for relief:</u>

    a.   For attorneys' fees;

    b.   For costs of suit incurred herein; and

27

1              c.     For such other and further relief as the Court deems just and

2  proper.

3

4                               **<u>DEMAND FOR JURY TRIAL</u>**

5         Under Rule 38 of the Federal Rules of Civil Procedure, Celerity demands a

6  trial by jury on all issues so triable.

7

8  DATED: April 28, 2017          PROCOPIO, CORY, HARGREAVES &
                                             SAVITCH LLP

9

10                                By:  /s/Cecilia O. Miller

11                                      Cecilia O. Miller
                                     Jamie D. Quient

12                                      Attorneys for Plaintiff
                                     Celerity Educational Group

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCS 118171-000012/2889270.3                                                        CASE No. 2:17-CV-3239