O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CELERITY EDUCATIONAL GROUP, a California Nonprofit Public Benefit Corporation, | CV 17-03239-RSWL-JC |
| Plaintiff, | **ORDER re: Defendant's Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment** [96] |
| v. | |
| SCOTTSDALE INSURANCE COMPANY, an Ohio corporation, | |
| Defendant. | |

On April 28, 2017, Celerity Educational Group[1] ("Plaintiff") brought this Action against its insurer, Scottsdale Insurance Company ("Defendant"), regarding an insurance coverage dispute. Compl., ECF No. 1. The Action arises out of Defendant's alleged failure to

---

[1] Plaintiff now goes by the name ISANA. See Pl.'s Opp'n to Mot. for Summ. J. ("Opp'n") at 1:1, ECF NO. 102. However, in order to remain consistent with the case caption and history, the Court refers to Plaintiff as Celerity or Plaintiff.

1

fulfill its obligations to provide an immediate defense to Plaintiff and one of its directors in an investigation initiated by the United States Attorney's Office for the Central District of California (the "Federal Investigation"). Currently before the Court is Defendant's Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment ("Motion"). For the reasons set forth below, the Motion is **GRANTED in part** and **DENIED in part.**

## I. BACKGROUND

**A.    Factual Background**

Plaintiff is a California nonprofit public benefit corporation. Order re Cross-Mot. for Summ. J. ("Order") 1:11-13, ECF No. 50. As of January 2017, Grace Canada was Plaintiff's CEO and Kendal Turner was Plaintiff's CFO.[2] Id. at 2:18-20. Plaintiff's board of directors is comprised of five members: Ron Ben-Yehuda, Curt Hessler, Francisco Mares, Julie Stern, and Dana Walden ("Walden"). Id. at 2:20-3:3.

1.    The Policy

Defendant issued a Business and Management Indemnity Policy, No. EKS3192143 (the "Policy"), to Plaintiff for the period of July 1, 2016 to July 1, 2017 (the "Policy Period"). Def.'s App. of Exs. ("AOE") Ex. 1, ECF No. 100-1. Under the Policy,

---

[2] At certain other times relevant to the Federal Investigation, Plaintiff's CEO was Vielka McFarlane. Compl. ¶ 27, ECF No. 1.

Plaintiff and its officers and directors are "Insureds." _Id._ at SIC00023-24 §§ B.4, 5. The Policy provides the following insuring agreement under the Insured Person and Organization Coverage Section ("IPO Coverage Section"):

> Insurer shall pay for the Loss of the Insureds which the Insureds have become legally obligated to pay by reason of a Claim first made against the Insureds during the Policy Period . . . and reported to the Insurer pursuant to Section E.1. herein, for any Wrongful Act taking place prior to the end of the Policy Period.

_Id._ at SIC00023 § A. A "Claim" under the Policy includes, among other things, "a criminal proceeding against any Insured, commenced by a return of an indictment or similar document, or receipt or filing of a notice of charges" and "a civil, administrative or regulatory proceeding or a formal governmental investigation against any insured commenced by the filing of a notice of charges, investigative order or similar document." _Id._ § B.1. Subject to certain exceptions, the Policy defines "Loss" as "damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court, and Costs, Charges and Expenses incurred by any of the Insureds." _Id._ at SIC00024 § B.7. "Costs, Charges and Expenses" include "reasonable and necessary legal costs, charges, fees and expenses incurred by any of the Insureds in defending Claims . . . ." _Id._ at SIC00023 § B.3.

///

## 2. The Federal Warrants and Investigation

On January 23, 2017, the United States Attorney's Office for the Central District of California ("USAO") issued three search and seizure warrants (the "Warrants") at locations affiliated with Plaintiff. See Pl.'s Index of Exs. ("IOE") Exs. B, C, D, ECF No. 102-2. The Warrants were issued in connection with the Federal Investigation initiated by the USAO into alleged theft of government property in violation of 18 U.S.C. § 641, theft or bribery concerning programs receiving federal funds in violation of 18 U.S.C. § 666, major wire fraud against the United States in violation of 18 U.S.C. § 1031, mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, and engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957. Id.; AOE Ex. 12 ("March 14 USAO Letter"). The Warrants authorized the search and seizure of Plaintiff's bank, accounting, and corporate records. IOE Exs. B, C, D.

The Warrants were executed on January 25, 2017. Order at 6:12. As part of the Federal Investigation leading up to the issuance of the Warrants, the USAO named certain directors and officers of Plaintiff's as "persons of interest." Id. at 6:13-16. The issuance and execution of the Warrants created a public relations crisis for Plaintiff. Id. at 6:17-19.

It is undisputed that the Policy obligates

4

Defendant to defend Plaintiff and all other Insureds under the Policy with respect to the Federal Investigation.  Id. at 6:20-23.

       3.   <u>Plaintiff's Retention of Gibson, Dunn &</u>
             <u>Crutcher, LLP</u>

Maurice Suh ("Suh"), a partner of Gibson, Dunn & Crutcher LLP ("Gibson Dunn") has represented Plaintiff since February 2015.  Id. at 7:3-5.  Plaintiff first retained Suh in connection with matters arising out of an audit of Plaintiff initiated by the Los Angeles Unified School District Office of the Inspector General ("OIG").  See Decl. of Maurice M. Suh ("Suh Decl.") ¶ 11, ECF No. 102-7.  The Federal Investigation at issue in this Action is related to the OIG's investigation.  Order at 7:10-12.

Soon after the Warrants were executed, Plaintiff sought assistance from Suh.  Id. at 7:13-14.  On February 3, 2017, Gibson Dunn entered into a written retainer agreement with Plaintiff and some of its officers.  Id. at 7:14-17.

       4.   <u>Communications Regarding Representation of</u>
             <u>Plaintiff in the Federal Investigation</u>

On February 7, 2017, Suh notified Defendant of the Warrants and corresponding Federal Investigation and sought Defendant's consent to Plaintiff's selection of Gibson Dunn as counsel.  Order at 7:20-23.  On March 7, 2017, Defendant sent an email to Plaintiff's former COO informing Plaintiff that Defendant had chosen Kasowitz,

Benson, Torres & Friedman LLP to defend Plaintiff in the Federal Investigation. _Id._ at 7:24-28. Defendant indicated in that email that it would not consent to Gibson Dunn representing Plaintiff in the Federal Investigation. _Id._ at 7:28-8:3. Plaintiff subsequently objected to Defendant's refusal to consent to Plaintiff's selection of Gibson Dunn. _Id._ at 8:3-5.

Suh met with representatives of the USAO on February 10, 2017 to advise them that Gibson Dunn had been retained to represent Plaintiff, as well as its officers and directors, in connection with the Federal Investigation. _Id._ at 8:6-10. Approximately five weeks later, the USAO informed Suh that it believed a conflict of interest might preclude Gibson Dunn from concurrently representing Plaintiff and some of its officers, directors, and employees. _Id._ at 8:10-15; _see_ March 14 USAO Letter. That same written communication identified numerous individuals as "persons of interest" in the Federal Investigation, including one of Plaintiff's board members, Dana Walden. March 14 USAO Letter. Plaintiff thereafter notified Defendant that those individuals identified as "persons of interest" who qualify as Insureds under the Policy request a defense of the claims therein. Order at 8:19-24.

Gibson Dunn executed a new retainer agreement with Plaintiff on or about April 18, 2017. _Id._ at 8:25-27; AOE Ex. 21. Defendant subsequently appointed separate

defense counsel for two of Plaintiff's officers—Grace
Canada and Kendal Turner.   Order at 8:28-9:2.
Plaintiff thereafter requested that Defendant appoint
separate counsel for each of Plaintiff's five board
members.   Id. at 9:2-5.   Defendant refused to appoint
separate counsel because Plaintiff had not "identified
any conflicts of interest between [the board members]
individually and/or with respect to" Plaintiff.   Id. at
9:5-9.   Accordingly, Gibson Dunn continued to represent
Plaintiff and all five members of its board of
directors in the Federal Investigation.   Id. at 9:9-11.

On April 11, 2018, this Court issued an Order
holding that, as a matter of law, Plaintiff is not
entitled to independent counsel, but that Walden is
entitled to separate counsel based upon the USAO March
14, 2017 letter identifying him as a person of
interest.   See generally Order.   Thereafter, on April
19, 2018, Defendant offered to appoint separate counsel
to Walden.   AOE Ex. 17; AOE Ex. 2, Dep. of Michael
Zartman ("Zartman Dep.") 217:7-218:17, ECF No. 100-2.
Walden agreed to accept Defendant's appointed defense
counsel on June 8, 2018.   Def.'s Reply to Pl.'s Opp'n
to Def.'s Statement of Undisputed Facts ("SUF") ¶ 31,
ECF No. 103-1.

**B.   Procedural Background**

Plaintiff filed its Complaint [1] on April 28,
2017, asserting four causes of action: (1) a
declaration that Defendant failed to provide

independent counsel in violation of California Civil Code section 2860; (2) breach of contract; (3) specific performance of Defendant's alleged duty to provide independent counsel; and (4) breach of the implied covenant of good faith and fair dealing.

On February 16, 2018, the parties filed cross-summary judgment motions [32, 38] relating to Plaintiff's right to independent counsel, and on April 11, 2018, the Court denied Plaintiff's claim for independent counsel, but granted Plaintiff's claim for separate counsel for Walden [50]. Defendant filed the instant Motion [96] on November 20, 2018. Plaintiff timely opposed [102], and Defendant timely replied [103].

## II. DISCUSSION

**A.** **Legal Standard**

### 1. Summary Judgment

Federal Rule of Civil Procedure 56(a) states that a "court shall grant summary judgment" when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" for purposes of summary judgment if it might affect the outcome of the suit, and a "genuine" issue exists if the evidence is such that a reasonable fact-finder could return a verdict for the nonmovant. Anderson, 477 U.S. 242, 248 (1986). The evidence, and any inferences based on underlying facts, must be viewed in the light most

favorable to the nonmovant.  _Twentieth Century-Fox Film_
_Corp. v. MCA, Inc._, 715 F.2d 1327, 1328-29 (9th Cir.
1983).  In ruling on a motion for summary judgment, the
court's function is not to weigh the evidence, but only
to determine if a genuine issue of material fact
exists.  _Anderson_, 477 U.S. at 255.

Where the nonmovant bears the burden of proof at
trial, the movant need only prove that there is no
evidence to support the nonmovant's case.  _In re Oracle_
_Corp. Secs. Litig._, 627 F.3d 376, 387 (9th Cir. 2010).
If the movant satisfies this burden, the burden then
shifts to the nonmovant to produce admissible evidence
showing a triable issue of fact.  _Id._; _Nissan Fire &_
_Marine Ins. Co. v. Fritz Cos._, 210 F.3d 1099, 1102-03
(9th Cir. 2000); _see also_ _Cleveland v. Policy Mgmt._
_Sys. Corp._, 526 U.S. 795, 805-06 (1999)(quoting _Celotex_
_Corp. v. Catrett_, 477 U.S. 317, 322 (1986)).

2.  _Partial Summary Judgment_

Federal Rule of Civil Procedure 56 authorizes
courts to grant partial summary judgment to limit the
issues to be tried in a case.  _State Farm Fire & Cas._
_Co. v. Geary_, 699 F. Supp. 756, 759 (N.D. Cal. 1987)
(citing _Lies v. Farrell Lines, Inc._, 641 F.2d 765, 769
n.3 (9th Cir. 1981)); _see, e.g._, _White v. Lee_, 227 F.3d
1214, 1240 (9th Cir. 2000)("[A] court may award a
partial summary judgment that decides only [the] issue
[of liability].").  Absent special circumstances,
partial summary judgment is not appealable prior to the

entry of a final judgment because such orders do not dispose of all claims or end the litigation on the merits.  <u>Williamson v. UNUM Life Ins. Co. of Am.</u>, 160 F.3d 1247, 1250 (9th Cir. 1998)(citations omitted).

**B.  <u>Analysis</u>**

    1.  <u>Request for Judicial Notice</u>

    Plaintiff seeks judicial notice of the fact that Defendant previously took the position and argued to this Court that it was not obligated to provide separate counsel to Walden based on the March 14, 2017 letter from the USAO.  <u>See</u> Req. for Judicial Notice, ECF No. 102-4.  Judicial notice may be taken of an adjudicative fact not subject to reasonable dispute in that it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Defendant's position that it was not obligated to provide separate counsel to Walden is documented in its motion that was filed with the Court. <u>See</u> ECF No. 42.  As such, and because Defendant does not oppose the request for judicial notice, it is **GRANTED**.  Fed. R. Evid. 201(c)(2).

    2.  <u>Evidentiary Objections</u>

    Plaintiff filed numerous objections to the evidence Defendant submitted in support of its Motion.  <u>See</u> Pl.'s Evid. Objs., ECF No. 102-3.  Defendant responded to Plaintiff's objections, <u>see</u> Def.'s Response to Pl.'s

Evid. Objs., ECF No. 103-3, and also filed numerous objections to the evidence Plaintiff submitted in support of its Opposition.  See Def.'s Evid. Objs., ECF No. 103-2.  Where the objected-to evidence is relevant to the Court's analysis, the pertinent objections and reasons for overruling or sustaining the objections will be delineated.

  3. <u>Breach of Contract</u>

  As a preliminary matter, Defendant argues that it is not liable for Gibson Dunn Fees incurred by Plaintiff because Defendant did not consent to Gibson Dunn and under the Policy, Defendant is not required to pay for legal fees incurred without its consent.[3]  SUF ¶ 9; AOE Ex. 1.  This provision is known as a no voluntary payment provision ("NVP"), which "California law enforces . . .  in the absence of economic necessity, insurer breach, or other extraordinary circumstances."  <u>Jamestown Builders, Inc. v. Gen. Star Indemnity Co.</u>, 77 Cal. App. 4th 341, 346 (Cal. Ct. App. 1999).  NVPs are "based on the equitable rule that 'the insurer [is invested] with the complete control and direction of the defense' and cannot be expected to pay for that which it does not control."  <u>Tradewinds</u>

_____

  [3] Condition F.3 of the Policy provides: "The Insureds agree not to settle or offer to settle any Claim, incur any Costs, Charges and Expenses or otherwise assume any contractual obligation or admit any liability with respect to any Claim without the prior written consent of the Insurer, such consent not to be unreasonably withheld."  SUF ¶ 9; AOE Ex. 1 at CEG 000591.

_Escrow, Inc._ v. _Truck Ins. Exchange_, 97 Cal. App. 4th 704, 710 (Cal. Ct. App. 2002) (citations omitted). However, "when the insured has requested and been denied a defense by the insurer . . . the insured may ignore the policy's provisions forbidding the incurring of defense costs without the insurer's prior consent, and under the compulsion of that refusal undertake his own defense at the insurer's expense." _Gribaldo, Jacobs, Jones & Assocs. v. Agrippina Versicherunges A._, 3 Cal. 3d 434, 449 (1970); _Jamestown Builders, Inc._, 77 Cal. App. 4th at 348 ("The no-voluntary-payments provision is superseded by an insurer's antecedent breach of its coverage obligation."). Thus, if Defendant breached the Policy by refusing to provide an immediate defense, then the NVP provision will not apply to bar Plaintiff from recovering the defense fees it incurred during this period.

In establishing its claim for breach of contract, Plaintiff must prove (1) the existence of a valid contract, (2) Plaintiff's performance, (3) Defendant's breach, and (4) damage resulting from the breach. _Reichert v. General Ins. Co._, 68 Cal. 2d 822, 830 (1968). With respect to the first two elements, there is no dispute that the parties had a valid contract and that Plaintiff performed under the contract. _See_ _Buss v. Superior Court_, 16 Cal. 4th 35, 44 (1997) ("An insurance policy is a contract between an insurer and an insured.").

### a. *Breach of Policy*

As to breach, Plaintiff alleges that Defendant breached the Policy by: (1) failing to pay defense fees incurred between tender and acceptance of a defense; (2) failing to reimburse Plaintiff for defense fees incurred prior to Plaintiff's tender of the claim to Defendant; and (3) failing to assign separate counsel to Walden sooner or reimburse Plaintiff for fees incurred as a result thereof. The Court addresses each allegation in turn.

### i. *Failure to Pay Fees Between Tender and Acceptance of Defense*

Plaintiff argues that Defendant breached the Policy by failing to pay Plaintiff's defense fees incurred between tender and acceptance of a defense. It is settled that "the duty to defend arises as soon as tender is made . . . . [and] the insurer is responsible for those costs whether or not there is ultimately any duty to indemnify the insured for the claim." Montgomery Ward & Co., Inc. v. Imperial Cas. & Indem. Co., 81 Cal. App. 4th 356, 373 (2000). However, determining whether an insurer "has breached its duty to provide an immediate defense is a fact-bound inquiry that looks to both the insurer's diligence in accepting the tender and the insured's diligence in responding to the insurer's requests for further information regarding the claim." Haskins v. Employers Ins. of Wausau, 126 F. Supp. 3d 1117, 1123 (N.D. Cal. Aug. 26,

2015).

It is undisputed that on February 7, 2017, Plaintiff notified Defendant of the Warrants and sought consent to Plaintiff's selection of Gibson Dunn as counsel. AOE Ex. 3. However, the parties dispute the date on which Defendant offered to provide defense counsel to Plaintiff. See Signal Products, Inc. v. American Zurich Ins. Co., No. 2:13-cv-04581-CAS-AJWx, 2014 WL 12782198, at *4 (C.D. Cal. Aug. 4, 2014) ("[N]ormally an insurer may discharge [the duty to defend] by appointing counsel to defend the insured."). It is possible that Defendant offered counsel as early as February 7, 2017, as Plaintiff's CEO emailed Plaintiff's insurance agent on February 10, 2017 stating "I am writing in response to your February 7, 2017 email indicating that Scottsdale Insurance Co. intends to appoint defense attorneys from its panel." See AOE Ex. 5.[4] Yet, other evidence, including claim notes taken by Defendant's employees shows that on February 9, 2017, Plaintiff was not considered an insured, but that as of February 10, 2018, Plaintiff

---

[4] Plaintiff objects to this evidence on grounds of lack of foundation, hearsay, best evidence, and Federal Rules of Evidence 403. Pl.'s Objs. No. 2. None of these grounds support Plaintiff's objection, as the email was sent by Plaintiff's CEO, is admissible hearsay as a party admission, Fed. R. Evid. 801 (d)(2), is not unduly prejudicial, and is not being used to describe the contents of the February 7 email, but instead to show Plaintiff's knowledge that as of February 9, 2017, Defendant intended to appoint counsel to defend Plaintiff. As such, Plaintiff's Objection is **OVERRULED.**

was deemed an insured and referral to coverage counsel was approved. AOE Ex. 7. These notes also reveal that a representative of Defendant spoke with a Gibson Dunn attorney on February 9, 2017, but the parties dispute whether the attorney told Defendant that there was "nothing to do" with respect to the Federal Investigation at the time. Id.; Decl. of Jeremy S. Smith ("Smith Decl.") ¶¶ 7-9, ECF No. 102-6.[5] Ultimately, the parties agree that on March 7, 2017, Defendant notified Plaintiff that it did not consent to Gibson Dunn, but it had assigned defense counsel to represent Plaintiff. AOE Ex. 8 at 5.

Viewing the evidence in the light most favorable to the non-moving party, and thereby assuming that Defendant first notified Plaintiff that it would assign defense counsel on March 7, 2017, a question of fact still remains as to whether this month-long delay constitutes a breach of the Policy. Specifically, Plaintiff was the target of a highly-publicized Federal Investigation, and three Warrants had just been

---

[5] Defendant objects to this evidence on the basis that Smith is an undisclosed expert, and his testimony constitutes improper expert opinion and hearsay. However, Smith is an attorney retained by Plaintiff in connection with the underlying Investigation. His testimony is not expert testimony, as he is merely testifying to events that he was personally involved in, and responding to Defendant's characterization of a phone call which included him. Moreover, this is not impermissible hearsay, because the statement is being used to show that there is a dispute over what the parties communicated to each other at the time of the phone call in question, not for its truth. As such, Defendant's Objection is **OVERRULED.**

executed against it.  According to Plaintiff's counsel for the Federal Investigation, the "high-profile and high-stakes nature of the Warrants [made it] necessary for Celerity to act immediately to respond to the Warrants."  Suh Decl. ¶ 14.[6]  Thus, a trier of fact could find that this delay breached the Policy in light of the surrounding circumstances.  See e.g. Signal Products, Inc., 2014 WL 12782198, at *16 (finding that whether an insurer breached its duty to defend, where it failed to respond to the insured's initial tender within 40 days, was a question of fact for the jury to decide in light of the totality of the evidence).

Because a triable issue of fact remains as to the urgency with which Defendant should have responded to Plaintiff's claim, and the speed with which Defendant did respond to Plaintiff's claim, the Court cannot conclude that as a matter of law, Defendant did not breach the Policy on these grounds.

### ii. *Failure to Reimburse Pre-Tender Defense Fees*

Plaintiff next asserts that Defendant breached the

---

[6] Defendant objects to this evidence on the grounds that Suh is an undisclosed expert witness, and that the testimony constitutes inadmissible hearsay and improper expert opinion. See Def.'s Evid. Objs.  However, Suh is the attorney who represented Plaintiff in connection with the Investigation.  His testimony is not an expert opinion, but is instead, knowledge that he acquired by virtue of his representation.  Moreover, this is not impermissible hearsay because he is not describing an out of court statement, but merely discussing the events which transpired during his representation of Plaintiff.  Thus, the Court **OVERRULES** Defendant's Objection.

Policy by failing to compensate Plaintiff for defense fees incurred following execution of the Warrants, but prior to Plaintiff's tender of the claim to Defendant. Plaintiff claims it was required to immediately hire counsel to represent its interests in response to the Warrants, and as such, its pre-tender defense costs were involuntary and should be recoverable.

"An insured may be able to avoid application of a no-voluntary-payments provision where the previous payments were made involuntarily because of circumstances beyond its control . . . . [o]r the insured may be faced with a situation requiring immediate response to protect its legal interests." Jamestown Builders, 77 Cal. App. 4th at 348.  In determining whether an insured incurred fees voluntarily, "the key is not the involuntary nature of the underlying obligation, but the involuntariness of not giving prior notice to the insurer as required by NVP clauses."  Corthera, Inc. v. Scottsdale Ins. Co., No. 14-cv-05014-EMC, 2016 WL 270951, at*8-9 (N.D. Cal. Jan. 22, 2016) (citations omitted) ("[T]he courts have found involuntary payment in relatively limited situations.  The two California cases that found involuntary payments both 'concerned situations in which the insured's delay in tendering was allegedly due to the difficulty locating the policy or identifying the insurer.'").

Here, the Warrants were issued on January 23, 2017

17

and executed on January 25, 2017.  By the time
Plaintiff sought assistance from Gibson Dunn, the
Warrants had already been executed.  <u>See</u> Suh Decl. ¶
15.  Plaintiff fails to provide evidence establishing
why it was unable to immediately contact Defendant to
notify it of the Federal Investigation.  <u>In re Oracle
Corp. Secs. Litig.</u>, 627 F.3d at 387 ("Where the non-
moving party bears the burden of proof at trial, the
moving party need only prove that there is an absence
of evidence to support the non-moving party's case. . .
. [then] the non-moving party must come forth with
evidence from which a jury could reasonably render a
verdict in the non-moving party's favor.").  Because
Plaintiff fails to produce any evidence to create a
triable issue as to whether Plaintiff's decision to
incur Gibson Dunn fees was involuntary, the Court
**GRANTS** Defendant's Motion with respect to Plaintiff's
claim that Defendant breached the Policy by refusing to
reimburse Plaintiff for its pre-tender fees.

iii.      *Failure to Assign Separate Counsel*
*to Walden Sooner*

Lastly, Plaintiff argues that Defendant breached
the Policy by failing to assign separate counsel to
Walden until ordered by this Court, and failing to
reimburse Plaintiff for related fees incurred.
Defendant alleges that Plaintiff lacks standing to
pursue this claim, and the related bad faith claim
discussed below, because Walden is the real party in

18

interest as to these claims, the Policy does not allow Plaintiff to pursue Walden's claims, and Walden did not assign his claims to Plaintiff. However, Plaintiff is a direct party to the Policy, the very nature of which is to ensure that Plaintiff's directors and officers, through whom Plaintiff acts, are insured.[7] While the directors and officers may ultimately benefit from the Policy, that does not mean that Plaintiff is not a real party in interest with respect to its claims. See Fed. R. Civ. P. 17(a) ("a party with whom or in whose name a contract has been made for another's benefit ... may sue in [that person's] own name[] without joining the person for whose benefit the action is brought."). Plaintiff incurred the costs resulting from Defendant's alleged breach, and thus, any damages due to the pecuniary loss should be recovered by Plaintiff.[8]

---

[7] The Policy defines "Insureds" to include "the Organization and Insured Persons." The term "Organization" is identified on the Certificate of Insurance as "Celerity Educational Group." "Insured Persons" is defined to include "all persons who were, now are or shall become . . . a director, officer, trustee, volunteer, committee member or employee of the Organization." SUF ¶ 17.

[8] Defendant further argues that allowing Plaintiff to pursue these claims now, subjects Defendant to the risk that it will have to re-litigate these issues later, in the event that Walden pursues the same claims seeking emotional distress damages. Defendant cites Reichert v. General Ins. Co. of America, 68 Cal. 2d 822 (1968), for the proposition that "an entire claim arising either upon a contract or from a wrong cannot be divided and made the subject of several suits." However, as far as the Court is aware, there is only one suit that has been brought against Defendant. Any suit that would be brought against it by Walden directly for personal emotional distress damages is purely hypothetical at this juncture and should not be the basis for dismissing Plaintiff's claims.

19

On April 11, 2018, this Court issued an Order requiring Defendant to provide Walden with separate counsel. ECF No. 50. This Order was predicated on the March 14 USAO Letter, identifying Walden as a person of interest in the Federal Investigation. Id. at 22:1-9; AOE Ex. 12. Consequently, as of March 15, 2017, when Defendant received the March 14 USAO letter, Defendant had a duty to assign separate counsel to Walden. See SUF ¶ 23. Defendant seeks summary judgment, suggesting that it complied with its duty because on March 27, 2017, it agreed to appoint Arent Fox to represent the twenty persons identified in the March 14 letter. AOE Ex. 13. However, as this Court held in its April 11, 2018 Order, "[a] person of interest potentially would have a personal interest adverse to the other Insureds' corporate interest." Order at 22:7-9. Thus, Walden was entitled to his own separate counsel, not counsel shared with other persons of interest. As such, the Court cannot conclude that as a matter of law, Defendant did not breach the Policy by failing to provide separate counsel to Walden sooner.

In sum, because triable issues of fact exist regarding whether Defendant breached the Policy by its delay in providing defense counsel to Plaintiff and its delay in providing separate defense counsel to Walden, Defendant has not shown that Plaintiff cannot establish that Defendant breached the Policy as a matter of law. ///

### b. *Causation & Damages*

Defendant contends that Plaintiff fails to prove causation and damages. Defendant alleges that Plaintiff would have retained Gibson Dunn even if Defendant had offered Plaintiff counsel sooner, and that because Plaintiff chose to incur Gibson Dunn fees, these cannot be considered "damages." However, even if Plaintiff preferred to be represented by Gibson Dunn, the Court cannot conclude as a matter of law that Plaintiff would have hired Gibson Dunn regardless of whether Defendant provided an immediate defense. Moreover, if a jury finds that Defendant breached the Policy, then Plaintiff was within its right to hire Gibson Dunn, and the fees incurred during the breach must be reimbursed by Defendant. See Travelers Property Cas. Co. of America, 2012 WL 1657121, at *4 (finding that insurer's initial refusal to provide its insured with a defense divested it of the right to control the insured's defense); Amato v. Mercury Casualty Co., 53 Cal. App. 4th 825, 831 (Cal. Ct. App. 1997) ("Where an insured mounts a defense at the insured's own expense following the insurer's refusal to defend, the usual contract damages are the costs of the defense.").

Because triable issues of fact exist regarding Plaintiff's claim for breach of contract, the Court **DENIES** Defendant's Motion with respect to this claim.

///

## 4. Breach of Implied Covenant of Good Faith and Fair Dealing

A covenant of good faith and fair dealing is implied in every insurance contract. <u>Jordan v. Allstate Ins. Co.</u>, 148 Cal. App. 4th 1062, 1071 (Cal. Ct. App. 2007). An insurer breaches this covenant when it engages in "bad faith" by acting unreasonably or without proper cause in delaying or denying policy benefits. <u>Chateau Chamberay Homeowners Ass'n v. Assoc. Intern. Ins. Co.</u>, 90 Cal. App. 4th 335, 347 (Cal. Ct. App. 2001), *disapproved on other grounds*. "Bad faith does not lie with 'an honest mistake, bad judgment or negligence, but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." <u>Tetravue Inc. v. St. Paul Fire & Marine Ins. Co.</u>, No. 14-CV-2021 W (BLM), 2018 WL 1172852, at *5 (S.D. Cal. Mar. 6, 2018) (quoting <u>Wilson v. 21st Century Ins. Co.</u>, 42 Cal. 4th 713, 726 (2007)).

Plaintiff alleges that Defendant acted unreasonably in failing to provide separate counsel to Walden prior to this Court's Order on April 11, 2018. As discussed, on March 15, 2017, Defendant was informed that Walden, and nineteen other individuals, were identified as persons of interest by the USAO. SUF ¶ 23. In pertinent part, the USAO letter read as follows: "[t]he individuals identified would have . . . interests that

22

are potentially adverse to the Celerity Entities and each other.  We therefore believe these individuals will require independent legal counsel . . . ."  AOE Ex. 12.  Because the USAO letter explicitly flagged a potential conflict of interest with respect to Walden, Plaintiff asserts that Defendant's conduct in refusing to provide Walden with separate counsel upon receipt of the letter establishes bad faith.  On the other hand, Defendant argues that it responded to the USAO letter reasonably by offering to appoint Arent Fox to represent all of the individual Insureds, and by twice asking Plaintiff to identify whether any conflicts of interest exist amongst themselves that cannot be waived.  <u>See</u> AOE Exs. 13, 15, 16.

Viewing the facts in the light most favorable to Plaintiff, a jury could conclude that Defendant acted unreasonably in refusing to provide separate counsel to Walden immediately in response to the USAO's letter. <u>See</u> <u>Harbison v. American Motorists Ins. Co.</u>, 636 F. Supp. 2d 1030, 1041 (E.D. Cal. 2009) ("A trier of fact may find that an insurer acted unreasonably if the insurer ignores evidence available to it which supports the claim."); <u>Chateau Chamberay Homeowners Ass'n</u>, 90 Cal. App. 4th at 350 ("[T]he reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact . . . .").  As such, a triable issue of fact remains, and the Court **DENIES** Defendant's

Motion with respect to this claim.[9]

5. <u>Punitive Damages</u>

To recover punitive damages, a plaintiff must prove "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). "Oppression" includes "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights" and "malice" includes "conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." <u>Id.</u> § 3294(c). "Clear and convincing evidence" refers to evidence that is "so clear as to leave no substantial doubt." <u>Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.</u>, 78 Cal. App. 4th 847, 891 (Cal. Ct. App. 2000) (citations omitted); <u>see</u> <u>Basich v. Allstates Ins. Co.</u>, 87 Cal. App. 4th 1112, 1121 (Cal. Ct. App. 2001) ("[P]laintiff [can only] prevail on a punitive damages claim . . . by establishing malice, oppression

---

[9] Plaintiff also alleges that Defendant acted in bad faith by failing to appoint separate claims adjusters for each of the insureds involved, and failing to give adequate consideration to the exigent circumstances surrounding the execution of the Warrants. In support of these claims, Plaintiff cites to a report by an expert witness on claim handling standards. <u>See</u> IOE Ex. N at 11, 12. However, Defendant objects to this evidence on the grounds that it constitutes inadmissible hearsay. Because the report is an out-of-court statement offered for its truth, and Plaintiff does not identify an exception to the hearsay rule which would apply, the Court **SUSTAINS** Defendant's Objection to the report. <u>See</u> <u>Hunt v. City of Portland</u>, 599 Fed. Appx. 620, 621 (9th Cir. 2009) (concluding that expert report was inadmissible hearsay).

or fraud by clear and convincing evidence. Thus, any
evidence submitted in response to a motion for summary
adjudication must necessarily meet that standard.").
While the same evidence may be considered for both a
finding of bad faith and punitive damages, "the conduct
required to award punitive damages . . . is of a
different dimension than that required to find bad
faith" and evidence supporting punitive damages "must
satisfy a . . . far more stringent standard." Shade
Foods, Inc., 78 Cal. App. at 891 (citations omitted).

Plaintiff alleges that it is entitled to punitive
damages due to Defendant's month-long delay in
initially accepting its obligation to defend Plaintiff,
its thirteen month delay in accepting Walden's request
for separate counsel, and its failure to pay any Gibson
Dunn fees. AOE Ex. 19 at 123:18-124:6. However,
Plaintiff does not cite any evidence establishing that
Defendant engaged in these actions with a willful
disregard of Plaintiff's rights. See United Investors
Life Ins. Co. v. Grant, 387 Fed. App'x 683, 687 (9th
Cir. 2010) (finding that even where an insurer waited
more than a year before investigating insured's claim
for policy proceeds, punitive damages were not
warranted because the insured "presented no evidence
that [insurer] intended to injure her or anyone else").
Even if a jury were to conclude that Defendant made a
deliberate and unreasonable decision to delay providing
counsel to Walden immediately upon receiving the USAO

letter (so as to support a finding of bad faith), in determining whether punitive damages are warranted, "we must look beyond the matter of reasonable response to that of motive and intent." <u>Neal v. Farmers Ins. Exchange</u>, 21 Cal. 3d 910, 922 (1978); <u>see</u> <u>Slottow v. Am. Cas. Co.</u>, 10 F.3d 1355, 1361 (9th Cir. 1993) ("Put another way, punitive damages are recoverable only where the defendant acted with the intent to vex, injure, or annoy.") (citations omitted).

Here, the parties are engaged in a bona fide dispute, and there has been no showing that Defendant tried to take advantage of Plaintiff or otherwise act with malicious or oppressive intent. In this context, punitive damages are not proper. <u>See</u> <u>Slottow</u>, 10 F. 3d at 1361 (rejecting punitive damages where the parties were merely engaged in a contract dispute with each side aggressively advancing its position, and the record did not support a finding that the insurer acted fraudulently). As such, the Court **GRANTS** Defendant's Motion as to punitive damages.

6. *Brandt* Fees

Where an insurer breaches the implied covenant of good faith and fair dealing, the insured can recover attorneys' fees it incurred in order to obtain contract benefits under the insurance policy ("<u>Brandt</u> fees"). <u>Brandt v. Super. Ct.</u>, 37 Cal. 3d 813, 817 (1985). <u>Brandt</u> fees are a component of damages which a plaintiff must prove at trial. <u>Id.</u> at 819.

Defendant moves for summary judgment on Plaintiff's claim for <u>Brandt</u> fees because Plaintiff failed to produce evidence of these fees. Plaintiff argues that the parties agreed to defer the issue of <u>Brandt</u> fees until after a determination of bad faith liability. Plaintiff alternatively contends that Defendant's Motion is not supported by undisputed facts, because Plaintiff already produced some <u>Brandt</u> fee evidence. The Court addresses Plaintiff's arguments in turn.

First, it is well-established that "[s]ince [<u>Brandt</u>] fees are recoverable as damages, the determination of the recoverable fees must be made by the trier of fact unless the parties stipulate otherwise." <u>Brandt</u>, 37 Cal. 3d at 819. Plaintiff attempts to circumvent this standard by pointing to the parties' Updated Joint Rule 26(f) Report which states: "Celerity proposes that discovery of the existence and amount of its *Brandt* fees be phased to occur after an adjudication of Scottsdale's liability, if any, as to Celerity's bad faith claim." ECF No. 52.[10] However, as explicitly stated in the Report, Plaintiff merely *proposed* that the parties defer <u>Brandt</u> fees. Neither Defendant nor the Court ever accepted this proposal.

___

[10] Defendant objects to the Rule 26(f) report as immaterial, irrelevant, and containing inadmissible hearsay. The Rule 26(f) report, which was signed by both parties and filed with the Court, is relevant and is being used to show why Plaintiff believed that <u>Brandt</u> fee discovery would be phased, not for its truth. <u>See</u> Fed. R. Evid. 801. Thus, this objection is **OVERRULED**.

Without a stipulation by the parties to defer <u>Brandt</u> fee discovery, or an Order by the Court bifurcating the issues, Plaintiff is not excused from its discovery obligations or its burden of proving its case at trial.

Next, the Court addresses whether Plaintiff's purported evidence creates a triable issue of fact sufficient to withstand summary judgment. <u>See</u> <u>In re Oracle Corp. Secs. Litig.</u>, 627 F.3d 376, 387 (9th Cir. 2010) (holding that where the moving party proves an absence of evidence to support to the non-moving party's case, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial"). Plaintiff indicates that it seeks <u>Brandt</u> fees incurred through both Gibson Dunn and its counsel in the Instant Action, Procopio, Cory, Hargreaves & Savitch LLP ("Procopio"). Miller Decl. ¶ 4.

With respect to the fees incurred by Procopio, Plaintiff points to the deposition transcript of its 30(b)(6) witness to support its assertion that it identified the <u>Brandt</u> fees incurred by Procopio. <u>See</u> AOE Ex. 19, SIC00296-SIC00299. However, the only information this witness provided as to <u>Brandt</u> fees was that as of the time of his deposition on October 30, 2018, Procopio incurred fees "in the range of $300,000" for "all the claims of this action" and that he knew

this because "Ceci told" him.[11]  <u>Id.</u>  This evidence is problematic as it is merely an approximation based on hearsay statements made to the witness by others.  <u>See</u> <u>Armor Ministries v. Century Surety Co.</u>, No. 3:13-cv-01441-GPC-BGS, 2016 WL 1388077, at *15 (S.D. Cal. April 7, 2016) ("[A] recover[y] of [<u>Brandt</u>] fees requires more than fair proximations.").  Moreover, the approximation sheds no light on the amount of fees incurred through Procopio specifically to obtain Policy benefits, as opposed to the fees incurred through Procopio in pursuing Plaintiff's tort claim.  <u>See</u> <u>id.</u> at *14 (S.D. Cal. April 7, 2016) (quotations omitted) ("In order to recover [Brandt] fees, a plaintiff must be able to separate out its litigation expenses such that it can clearly demarcate the fees that are attributable to its pursuit of the benefits it is entitled to under the policy, which are recoverable as [Brandt] fees, from the fees expended on obtaining amounts in excess of the policy . . . which aren't recoverable. . . . A plaintiff's attorney has no excuse for failing to do the necessary segregation of fees because the [Brandt] rule is not new.").  Further, Plaintiff does not dispute that it did not produce, describe, or otherwise make Procopio's invoices available for inspection by Defendant, as it is required to do under Rule 26.  <u>See</u> <u>Nationwide Mut. Ins.</u>

---

[11] Presumably, the witness is referring to Plaintiff's coverage counsel, Cecilia O. Miller, as "Ceci."

<u>Co. v. Ryan</u>, No. 12-CV-05000-JST, 2014 WL 12709392, at *2 (N.D. Cal. Apr. 14, 2014) ("By failing to either produce a copy of its attorney billing records, produce a description of them, or make the records available, Defendants clearly violated their obligations under Rule 26 . . . ."). Thus, Plaintiff's purported evidence regarding the <u>Brandt</u> fees incurred through Procopio is insufficient.[12]

With respect to the <u>Brandt</u> fees Plaintiff incurred through Gibson Dunn, Plaintiff alleges that it provided Gibson Dunn invoices identifying approximately $39,706 in <u>Brandt</u> fees. Plaintiff does not provide the Court with the invoices, but instead, supports its assertion by citing to its attorney's declaration, in which she states that she has regularly transmitted to Defendant copies of invoices showing the fees incurred by Gibson Dunn "in responding to the federal investigation" and that the invoices "included" <u>Brandt</u>-related work done by the firm which approximately amounts to $39,706. Miller Decl. ¶¶ 3, 4. However, <u>Brandt</u> requires that Plaintiff differentiate between recoverable and nonrecoverable fees within the invoices. <u>See Armor Ministries</u>, 2016 WL 1388077, at *14. The fact that the invoices may have included some of the <u>Brandt</u> fees which Plaintiff seeks to recover, without any more

---

[12] Indeed, Plaintiff's counsel admits that she consistently objected to deposition testimony or documents concerning its <u>Brandt</u> fees. Miller Decl. ¶¶ 13-14.

information establishing that Plaintiff adequately identified or segregated these fees as required by Brandt, is insufficient to withstand summary judgment.[13] See e.g. Slottow, 10 F.3d at 1362 ("Because the bank made no effort to segregate its litigation expenses as required by [Brandt], we affirm the district court's decision not to award fees.").[14]

Because Plaintiff fails to establish that it provided Defendant with evidence of its Brandt fees, segregated as required by Brandt, Plaintiff has not satisfied its burden of establishing the existence of a triable issue of fact. See Erickson v. State Farm General Ins. Co., No. 2:12-cv-2784 MCE DAD PS., 2013 WL 4056280, at *2 (E.D. Cal. Aug. 12, 2013) ("[S]ummary

---

[13] This is particularly so in light of the fact that, according to Defendant, "Celerity never identified Gibson Dunn's fees as its *Brandt* fees and Celerity's 30(b)(6) witness identified Celerity's counsel of record [Procopio] when describing its *Brandt* fee claim." Def.'s Reply at 13:8-10. Thus, presumably, Defendant was not aware that it had to search through the Gibson Dunn invoices to identify Brandt fees.

[14] In arguing that it did provide some evidence of Brandt fees incurred through Gibson Dunn, Plaintiff also points to its fee expert's report, in which the expert opined that Plaintiff incurred $39,706 in Brandt fees through Gibson Dunn. See IOE Ex. M. However, Defendant objects to this report as inadmissible hearsay. Expert reports are generally inadmissible hearsay. See Hunt, 599 Fed. Appx. at 621 (concluding that expert report was inadmissible hearsay); Alexie v. United States, No. 3:05-cv-00297 JWS, 2009 WL 160354, at *1 (D. Alaska Jan. 21, 2009) ("Application of the hearsay rule to exclude both parties' expert reports is quite straightforward. The reports are out-of-court statements by witnesses offered for their truth and so fall within the definition of hearsay . . . ."). Plaintiff does not argue that an exception to the hearsay rule applies to render the evidence admissible. Accordingly, the Court **SUSTAINS** Defendant's Objection to this report.

judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). As such, the Court **GRANTS** Defendant's Motion as to Plaintiff's claim for <u>Brandt</u> fees.

### III. CONCLUSION

Based on the foregoing, the Court **GRANTS in part** Defendant's Motion for Summary Judgment as to (1) Plaintiff's claim that Defendant breached the contract by failing to reimburse its pre-tender defense fees; (2) punitive damages; and (3) <u>Brandt</u> fees. The Court **DENIES in part** Defendant's Motion for Summary Judgment as to (1) breach of the implied covenant of good faith and fair dealing; and (2) breach of contract based on Defendant's failure to provide an immediate defense to Plaintiff, and Defendant's failure to assign separate counsel to Walden sooner.

**IT IS SO ORDERED.**

DATED: February 4, 2019          s/ RONALD S.W. LEW
                                 **HONORABLE RONALD S.W. LEW**
                                 Senior U.S. District Judge