Cecilia O. Miller (Bar No. 211111)
Ryan C. Caplan (Bar No. 253037)
William A. Smelko (Bar No. 96970)
PROCOPIO, CORY, HARGREAVES &
    SAVITCH LLP
525 B Street, Suite 2200
San Diego, California 92101
Telephone:    619.238.1900
Facsimile:    619.235.0398
Email:    cecilia.miller@procopio.com
          ryan.caplan@procopio.com
          bill.smelko@procopio.com

Attorneys for Plaintiff
ISANA, formerly known and having appeared as
Celerity Educational Group

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELERITY EDUCATIONAL GROUP, a California nonprofit public benefit corporation,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>SCOTTSDALE INSURANCE COMPANY, an Ohio corporation,<br><br>　　　　　Defendant. | Case No. 2:17-cv-03239-RSWL-JC<br><br>**TRIAL BRIEF OF PLAINTIFF ISANA**<br><br>Trial:　　　June 4, 2019<br>Time:　　　9:00 a.m.<br>Ctrm.:　　　6C<br>Judge:　　　Hon. Ronald S.W. Lew<br><br>Complaint Filed: April 28, 2017<br>Trial Date:　　　June 4, 2019 |

# **TABLE OF CONTENTS**

Page

I.      INTRODUCTION ...........................................................................1

II.     STATEMENT OF FACTS .............................................................2

     A.      The Parties..........................................................................2
     B.      The Scottsdale Policy.........................................................3
     C.      The Federal Warrants and Investigation ............................4
     D.      ISANA's Tender and Scottsdale's Response......................6
     E.      The Coverage Action .........................................................8

III.    ISANA WILL PREVAIL ON ITS CLAIMS FOR BREACH OF
     CONTRACT AND BREACH OF THE IMPLIED COVENANT OF
     GOOD FAITH AND FAIR DEALING (BAD FAITH)......................12

     A.      ISANA's Breach of Contract Claims.................................12

          1.      Scottsdale Breached the Policy by Failing to Pay ISANA's
             Defense Fees Incurred between ISANA's Tender and
             Scottsdale's Acceptance of a Defense ..........................13

          2.      Scottsdale Breached the Policy by Failing to Assign Separate
             Counsel to Mr. Walden Until Ordered by this Court, and by
             Failing to Reimburse Celerity for the Related Defense Fees
             Incurred .......................................................................15

     B.      ISANA's Claims for Breach of the Implied Covenant of Good Faith
         and Fair Dealing (Bad Faith) .............................................16

          1.      Scottsdale's Refusal to Reimburse ISANA for Defense Fees
             Incurred since Tender Constitutes Bad Faith ...............17

          2.      Scottsdale's Refusal to Appoint Separate Counsel to Mr.
             Walden and Reimburse ISANA for Any Related Defense
             Fees Constitutes Bad Faith ..........................................17

IV.     SCOTTSDALE'S PROFFERED DEFENSES ARE UNAVAILING............18

          1.      Mitigation of Damages .................................................18
           2.      Policy Terms..................................................................19
           3.      Condition Precedents.....................................................19
           4.      "Loss" Exclusion for Punitive Damages .......................19
           5.      "Prior Written Consent" Policy Provision.....................20
           6.      Waiver, Estoppel, and Unclean Hands ..........................20
           7.      Scottsdale's Alleged "Reasonable and Good Faith" Conduct.....21
           8.      ISANA's Reasonable and Necessary Fees ....................21
           9.      Genuine Dispute Doctrine .............................................21

V.      CONCLUSION ...........................................................................22

i

# TABLE OF AUTHORITIES

**Page(s)**

STATE CASES

*Aerojet-General Corp. v. Transport Indemnity Co.*
17 Cal.4th 38 (1997)............................................................................14, 15, 16, 21

*Buss v. Superior Court*
16 Cal.4th 35 (1997).......................................................................................13, 14

*Gribaldo, Jacobs, Jones & Assocs. v. Agrippina Versicherunges A.*
3 Cal. 3d 434 (1970).............................................................................................20

*Horace Mann Ins. Co. v. Barbara B.*
4 Cal.4th 1076 (1993)..........................................................................................14

*Jamestown Builders, Inc. v. Gen. Star Indem. Co.*
77 Cal. App. 4th 341 (1999).................................................................................20

*Montgomery Ward & Co., Inc. v. Imperial Cas. & Indem. Co.*
81 Cal.App.4th 356 (2000)...................................................................................13

*Montrose Chem. Corp. of Calif. v. Superior Court*
6 Cal.4th 287 (1993)............................................................................................13

*Scottsdale Ins. Co. v. MV Transp.*
36 Cal.4th 643 (2005)..........................................................................................13

*State v. Pac. Indem. Co.*
63 Cal.App.4th 1535 (1998)......................................................................14, 16, 21

FEDERAL STATUTES, REGULATIONS, AND RULES

18 U.S.C.
§ 641 ......................................................................................................................4
§ 666 ......................................................................................................................4
§ 1031 ....................................................................................................................4
§ 1341 ....................................................................................................................4
§ 1957 ....................................................................................................................4

DOCS 3664355.7

**OTHER AUTHORITIES**

*In The Matter of the Search of 2069 West Siauson Avenue, Los Angeles,*
   *California 90047*
   (Case No. 17MJ00114) .............................................................................. 4

*In The Matter of the Search of 3415 South Sepulveda Boulevard, Suites*
   *570 and 580, Los Angeles, California 90034*
   (Case No. 17MJ00113) .............................................................................. 4

*In the Matter of the Search of 3475 Meier Street, Los Angeles, CA*
   *90066*
   (Case No. 17MJ0015) ................................................................................ 4

*Mulhearn v. Lawyers Title Ins. Corp.*
   2014 WL 213554 ...................................................................................... 14

Plaintiff ISANA, formerly known and having appeared as Celerity Educational Group ("ISANA") respectfully submits the following Trial Brief.

## I.    INTRODUCTION

This lawsuit involves Defendant SCOTTSDALE INSURANCE COMPANY ("Scottsdale")'s ongoing failure and refusal to honor its coverage obligations owed to its insured, ISANA, arising out of a covered claim.  ISANA, a charter school serving students in Los Angeles' most underserved  communities, tendered its claim to Scottsdale over two years ago, but to date Scottsdale has failed to reimburse a dime of defense fees incurred between ISANA's tender of the claim and Scottsdale's acknowledgment of its defense obligations.  Similarly, ISANA apprised Scottsdale over two years ago of a potential conflict of interest identified by the United States Attorney involving one of its board members (an insured person), but to date Scottsdale has failed and refused to reimburse a dime of the defense fees incurred by ISANA in providing a defense to that board member.

Scottsdale has twice attempted to dispose of ISANA's lawsuit by way of summary judgment motion, and both times this Court refused to do so. In so ruling, this Court has twice acknowledged Scottsdale's coverage obligations owed to ISANA.   Yet, despite factual findings made by this Court that are fatal to Scottsdale's defenses, Scottsdale remains resolute in its determination to deny ISANA the very coverage for which it bargained when it purchased a liability insurance policy from Scottsdale.[1]

ISANA is confident a jury will agree that Scottsdale has breached its obligation under its insurance policy to provide ISANA with an immediate, full, and unconflicted defense for the underlying claim.  ISANA is confident a jury will similarly agree that Scottsdale's unreasonable refusal and delay in reimbursing

---

[1] The Court did dismiss those components of ISANA's claims relating to *Cumis* counsel, independent counsel for four other board members, pre-tender defense fees, *Brandt* fees, and punitive damages.  As such, none of those claims will be presented at trial.  Notably, these rulings only impact the *amount* of ISANA's potential recovery, not ISANA's right to such recovery.

ISANA for defense fees and providing a separate defense to one of ISANA's board members rose to the level of bad faith.

Based on the facts stipulated to by the parties in the Pre-Trial Conference Order filed by the Court and the prior findings of this Court, Scottsdale's liability is all but established. Scottsdale has no good explanation as to why, after two years, it has not made a single payment towards covered defense fees. As a result of Scottsdale's unreasonable failure to honor its defense obligations, ISANA has been significantly damaged in the amounts spent on defense fees as well as the reverberating effects of being forced to allocate funds from other programs it offers in underserved communities to pay the defense fees and costs owed by Scottsdale in the first instance.

Scottsdale is left to argue that the defense fees incurred by ISANA, for which Scottsdale has refused to pay even a portion to this day, were unreasonable and unnecessary. Scottsdale contends it is therefore excused from reimbursing *any* defense fees under the insurance policy issued to ISANA. However, because Scottsdale remains in breach of its policy, ISANA's fees and costs are *presumed reasonable and necessary as a matter of law*. Moreover, while ISANA has designated an expert who will testify as to the reasonable nature of its defense fees, Scottsdale has not designated any expert to rebut this testimony. Scottsdale will thus be unable to carry its burden at trial of rebutting the propriety of ISANA's defense fees at trial. Accordingly, ISANA will prevail in establishing both Scottsdale's liability and ISANA's damages for the entirety of defense fees and costs incurred by ISANA in defense of the Federal Investigation, without allocation or deduction.

## II.   STATEMENT OF FACTS

### A.   The Parties

ISANA is a California nonprofit public benefit corporation that operates seven California public charter schools, all of which serve students in some of the toughest neighborhoods in Los Angeles County.

2

At all relevant times during this dispute, ISANA's board of directors was comprised of the following five members:  Ron Ben-Yehuda, Curt Hessler, Francisco Mares, Julie Stern, and Dana Walden.  Each director serves on a volunteer basis, with no compensation despite the significant time commitment.  Kendal Turner is the CFO of ISANA.

Previously, ISANA contracted with a separate non-profit, Celerity Global Development ("Global"), which provided services to ISANA and whose charitable mission included supporting ISANA.  On May 31, 2017, ISANA's board of directors authorized termination of ISANA's contracts with Global.

Scottsdale is an affiliate of Nationwide Mutual Insurance Company, which is one of the largest insurance and financial services companies in the world.

**B.**     **The Scottsdale Policy**

To protect itself against third party claims and to ensure its mission of providing quality education to some of the most underserved and socioeconomically disadvantaged students in Los Angeles, ISANA purchased different forms of liability insurance, including a "Business and Management Indemnity Policy – Non-Profit Organizations," from Scottsdale (the "Policy").  Under the Policy, ISANA and its officers and directors are "Insureds."

The Policy had a policy period of July 1, 2016 to July 1, 2017 and an aggregate limit of $1 million for Insured Person and Organization Coverage.  As relevant to this action, the Policy obligates Scottsdale to provide the Insureds with an immediate and unconflicted defense of any "Claim" brought against any Insured:

> It shall be the duty of the Insurer and not the duty of the
> Insureds to defend any Claim.  Such duty shall exist even
> if any of the allegations are groundless, false or fraudulent.
> The Insurer's duty to defend any Claim shall cease when
> the Limit of Liability has been exhausted.

A "Claim" under the Policy includes "a criminal proceeding against any Insured, commenced by a return of an indictment or similar document, or receipt or filing of a notice of charges" and "a formal governmental investigation against any

3

Insured commenced by the filing of a notice of charges, investigative order or similar document."

The Policy sets no limit with respect to the legal costs Scottsdale is obligated to pay to defend the Insureds.  Instead, "[t]he limits of liability available to pay Insured Loss shall not be reduced by amounts incurred for Costs, Charges and Expenses."  "Costs, Charges and Expenses" are defined to include "expenses incurred by any of the Insureds in defending Claims[.]"  As such, the Policy limits are not eroded by Scottsdale's payment of "Costs, Charges and Expenses," meaning the Policy provides an unlimited defense in addition to policy limits.  The Policy further obligates Scottsdale not to "unreasonably with[o]ld" its consent for defense costs incurred directly by ISANA.

## C.    The Federal Warrants and Investigation

On January 23, 2017, the United States District Court issued three search and seizure warrants (the "Warrants") upon application from the United States Attorney's Office for the Central District of California ("USAO") at locations affiliated with ISANA and Global in matters captioned *In the Matter of the Search of 3475 Meier Street, Los Angeles, CA 90066* (Case No. 17MJ0015), *In The Matter of the Search of 3415 South Sepulveda Boulevard, Suites 570 and 580, Los Angeles, California 90034* (Case No. 17MJ00113), and *In The Matter of the Search of 2069 West Siauson Avenue, Los Angeles, California 90047* (Case No. 17MJ00114), all in the United States District Court, Central District of California (collectively, the "Federal Investigation").

The Warrants sought evidence of alleged violations of 18 U.S.C. § 641 (theft of government property or money); 18 U.S.C. § 666 (theft or bribery concerning programs receiving federal funds); 18 U.S.C. § 1031 (major fraud against the United States); 18 U.S.C. § 1341 (frauds and swindles); 18 U.S.C. § 1957 (engaging in monetary transactions in property derived from specified unlawful activity).  The Warrants authorized, *inter alia*, the search and seizure of bank, accounting, and

corporate records of ISANA.  Federal agents executed the Warrants on or about January 25, 2017.  The affidavits establishing probable cause for the Warrants remain under seal.

The issuance and execution of the Warrants created a high-profile and fast-moving crisis for ISANA.  ISANA needed immediate assistance communicating with the USAO, preserving privileges and information.  There was also extensive media surrounding the Warrants and each of ISANA's three authorizers, along with the schools' accreditation commission (the Accrediting Commission for Schools Western Association of Schools and Colleges, or "WASC"), ISANA's bank, vendors, lessors of various ISANA school sites, and others, were demanding answers and extensive information.  In exigent need of experienced and trusted counsel in the aftermath and blowback of the Warrants, ISANA determined to turn to their counsel, Maurice Suh, Esq. of the Los Angeles office of Gibson, Dunn & Crutcher LLP ("Gibson Dunn").

Shortly after execution of the Warrants, ISANA entered into a new engagement agreement with Gibson Dunn with respect to the Federal Investigation. Gibson Dunn, and Mr. Suh in particular, had been counsel for ISANA since February 2015, and already had in-depth knowledge of the facts and legal arguments that ISANA believed constituted a substantial portion of the issues and conduct under investigation.  Mr. Suh also has extensive experience with the USAO—the governmental agency leading the Federal Investigation.  In particular, Mr. Suh served as Deputy Chief of the Public Corruption and Government Fraud Section of the USAO for the Central District of California, where he prosecuted and supervised numerous public corruption and misconduct cases.  ISANA also tendered the Federal Investigation to Scottsdale, as set forth in the next section.

By correspondence dated March 14, 2017, the USAO confirmed the Federal Investigation encompassed potential violations of the above-identified federal statutes.  The letter also advised ISANA's counsel of the USAO's belief that its

5

investigation presented a conflict of interest precluding Gibson Dunn from jointly representing ISANA and its officers and directors.  In support thereof, the USAO named twenty (20) "persons of interest" with respect to the Federal Investigation, including *one* member of the ISANA's board of directors, Dana Walden.

While ISANA was continuing to request Scottsdale appoint Gibson Dunn as its defense counsel, on April 18, 2017, Gibson Dunn entered into a new engagement agreement with ISANA and its board members, including Mr. Walden, in which ISANA and the board members agreed to waive the potential conflicts upon informed written consent with respect to representation by Gibson Dunn specifically. Mr. Walden was willing to waive the potential conflict with respect to Gibson Dunn's concurrent representation of ISANA due to Gibson Dunn's institutional knowledge, experience, and expertise in ISANA's operations, the USAO, and the Federal Investigation as well as the absence of any offer from Scottsdale to provide Mr. Walden with a defense separate from the 19 officers and other persons named as "persons of interest."

### D.    ISANA's Tender and Scottsdale's Response

On February 2, 2017, ISANA's defense counsel tendered the Federal Investigation to Chartersafe, as the named insured on the Policy.  On February 7, 2017, ISANA's defense counsel notified Scottsdale of the three Warrants, sought an immediate defense, and sought consent to ISANA's selection of Mr. Suh and Gibson Dunn as counsel.  On February 9, 2017, Jeremy Smith, an associate with Gibson Dunn working on the Warrants and Federal Investigation matters, spoke briefly with a Scottsdale representative.  Contrary to Scottsdale's contentions during this action, Mr. Smith would not have advised "there was nothing to do" with respect to the Federal Investigation at that time, as there was extensive work necessary and Mr. Smith was in fact preparing for a critical meeting with the USAO the very next day.

Nearly a month elapsed before Scottsdale contacted ISANA and sought information regarding the Warrants and the Federal Investigation.  At that time

Scottsdale advised it was "continuing to investigate [ISANA's] request to have Gibson Dunn handle this matter."

Just two business days after making inquiry for documents, Scottsdale advised that, because it had not received the requested information, Scottsdale would be assigning its choice of counsel, Michael J. Bowe, Esq. and Daniel A. Saunders, Esq. of Kasowitz Benson Torres LLP ("Kasowitz") as panel counsel for all insureds—even though neither attorney cited any public charter school experience in their bios and Mr. Bowe practices in New York, not California.  Scottsdale's appointment of Kasowitz on March 7, 2017 was the *first time* Scottsdale acknowledged defense coverage to an ISANA representative and identified the counsel who Scottsdale sought to appoint.

Within days, ISANA responded to Scottsdale's unilateral appointment of panel counsel and sought a formal coverage determination, reconsideration of the denial of ISANA's choice of counsel, and alerted Scottsdale that substitution of counsel risked significant prejudice to ISANA's response to the Federal Investigation.  ISANA also noted that Scottsdale's consent per the Policy provisions shall not be "unreasonably" withheld.

On March 14, 2017, Scottsdale issued its first coverage position, which it labeled as "preliminary," and reservation of rights regarding the Federal Investigation.  Up until that point, Scottsdale had not issued a formal coverage opinion.

On March 15, 2017, ISANA provided the USAO's March 14th letter to Scottsdale, requesting a defense for the individuals identified by the USAO as "persons of interest."  Having received no response, Celerity's counsel reiterated the request on March 24, 2017.

On March 27, 2017, Scottsdale proposed appointing the law firm Arent Fox to defend all twenty persons of interest identified by the USAO.  When asked why Scottsdale proposed appointing one counsel for the additionally-named persons of

7

interest, Scottsdale's 30(b)(6) witness responded that "[i]t's what was the appropriate thing to do for the insureds under that circumstance."

ISANA's board of directors was advised of Scottsdale's offer to appoint a single law firm to defend all identified "persons of interest." However, Mr. Walden was unwilling to waive the potential conflicts of interests among the other "persons of interest" or with respect to a law firm other than Gibson Dunn.

On August 3, 2017, Scottsdale appointed Arent Fox to defend two ISANA officers—Grace Canada and Kendall Turner—after they withdrew their request to be represented by Gibson Dunn. Thereafter, upon determining there "may be a conflict" between Grace Canada and other individual Insureds, Scottsdale appointed Gordon & Rees to defend Ms. Canada in the Federal Investigation.

Following Scottsdale's continued refusal to consent to Gibson Dunn, ISANA requested Scottsdale identify separate panel counsel for each of ISANA's board members, including Mr. Walden. However, Scottsdale refused to do so, claiming that an "actual conflict" did not exist necessitating separate counsel for each board member, including Mr. Walden. During his deposition, Scottsdale's 30(b)(6) witness was unable to articulate why it was apparently "the appropriate thing to do for the insured" to propose separate counsel for the "persons of interest" in March of 2017, or to assign separate counsel for other insureds in August of 2017, but it was not "the appropriate thing to do for the insured" to assign separate counsel for Mr. Walden in response to ISANA's ongoing requests throughout the Federal Investigation.

### E.    The Coverage Action

On April 28, 2017, ISANA filed this action seeking a judicial declaration that it and its officers and directors (collectively referred to as the "Insureds" to be consistent with the Policy) were entitled to independent counsel for the Federal Investigation. ISANA also brought claims for breach of contract, specific performance, and breach of the implied covenant of good faith and fair dealing.

The parties agreed to present the issues relating to the Insureds' rights to independent counsel by way of cross-summary judgment motions, which were decided on or about April 11, 2018.  The Court denied ISANA's claim for *Cumis* counsel, but granted ISANA's claim for separate counsel for Mr. Walden.  The basis for the Court's ruling that Mr. Walden was entitled to separate counsel was the USAO's March 14th letter, which had previously been provided to Scottsdale on March 15, 2017 and which identified a potential conflict of interest.

It was only *after* this Court's April 11, 2018 ruling that Scottsdale finally offered Mr. Walden separate defense counsel from any other officers or directors to whom it was providing a defense.  Up and until that time, Scottsdale had denied *any* obligation to provide Mr. Walden a defense separate from any of the other Insureds.

On or about November 14, 2018, the parties exchanged initial expert witness designations.  ISANA designated two expert witnesses:  one to testify as to Scottsdale's claims handling and bad faith, and another to testify as to the reasonableness of the defense fees incurred by ISANA.  Scottsdale designated a single expert witness to "testify at trial regarding the standard of care Scottsdale rendered in handling the claim at issue in this litigation."  Scottsdale designated no other experts or topics on which it would offer expert testimony at trial.

On or about November 20, 2018, Scottsdale brought another motion for summary judgment or, alternatively, partial summary judgment.  On February 4, 2019, the Court granted in part and denied in part Scottsdale's motion.  In particular, the Court granted Scottsdale's motion with respect to ISANA's claims for reimbursement of pre-tender defense fees, punitive damages, and *Brandt* fees.  The Court denied Scottsdale's motion with respect to ISANA's breach of contract claims based on Scottsdale's failure to provide an immediate defense upon tender and Scottsdale's failure to provide separate defenses to Mr. Walden sooner.  The Court also denied Scottsdale's motion with respect to ISANA's bad faith claim as related to these breaches. In its ruling, the Court made the following factual findings:

On April 11, 2018, the Court issued an Order requiring [Scottsdale] to provide Walden with separate counsel. ECF No. 50. This Order was predicated on the March 14 USAO Letter, identifying Walden as a person of interest in the Federal Investigation. *Id*. at 22:1-9; AOE Ex. 12. Consequently, **as of March 15, 2017, when Defendant received the March 14 USAO Letter, Defendant had a duty to assign separate counsel to Walden**.

*     *     *

[A]s this Court held in its April 11, 2018 Order, "[a] person of interest potentially would have a personal interest adverse to the other insureds' corporate interest." Order at 22:7-9. Thus, **Walden was entitled to his own separate counsel, not counsel shared with other persons of interest**.

(ECF No. 118 at 20:1-8 and 20:13-18 (emphasis added).)

On April 2, 2019 the parties submitted their respective proposed witness lists and, consistent with its expert disclosure, Scottsdale identified only a single expert witness and the scope of his testimony was limited to claims handling (not ISANA's defense fees).

On April 30, 2019, the Court issued its approved Final Pretrial Conference Order, in which the following facts are deemed admitted and require no proof:

(a) Scottsdale issued to ISANA a Business and Management Indemnity Policy for the period of July 1, 2016 to July 1, 2017 (the "Policy").

(b) ISANA and its board members are insureds under the Policy.

(c) On January 23, 2017, the United States Attorney's Office ("USAO") issued three search and seizure warrants (the "Warrants") at locations affiliated with ISANA in matters captioned In the Matter of the Search of 3475 Meier Street, Los Angeles, CA 90066 (Case No. 17MJ0015), In The Matter of the Search of 3415 South Sepulveda Boulevard, Suites 570 and 580, Los Angeles, California 90034 (Case No. 17MJ00113), and In The Matter of the Search of 2069 West Slauson Avenue, Los Angeles, California 90047 (Case No. 17MJ00114), all in the United States District Court, Central District of California (the "Federal Investigation").

(d) On January 25, 2017, the USAO executed the Warrants.

(e) ISANA notified Scottsdale of the Warrants and Federal Investigation no later than February 7, 2017.

(f) On March 14, 2017, the USAO identified a potential conflict of interest between and among ISANA and certain ISANA–related individuals, including Dana Walden.

(g) On March 14, 2017, the USAO identified twenty persons of interest, including Dana Walden.

(h) On March 15, 2017, ISANA provided Scottsdale with a copy of the USAO's March 14, 2017 letter identifying the potential conflicts of interest.

(i) At all relevant times, Dana Walden was a board member of ISANA.

(j) On March 14, 2017, Scottsdale issued its written coverage position.

(k) On April 11, 2018, the Court held that ISANA was not entitled to the appointment of Cumis counsel and that four of ISANA's five board members were not each entitled to the appointment of separate counsel.

(l) On April 11, 2018, the Court held that Dana Walden was entitled to the appointment of separate defense counsel by Scottsdale for the Federal Investigation.

(m) On April 19, 2018, Scottsdale offered Dana Walden his own separate defense counsel for the Federal Investigation.

(n) On June 8, 2018 Dana Walden agreed to accept defense counsel appointed by Scottsdale.

(o) Scottsdale has not reimbursed the defense fees and costs incurred by ISANA in defending against the Federal Investigation between at least February 7, 2017 and March 14, 2017.

(p) Scottsdale has not reimbursed the defense fees and costs incurred by ISANA in providing a separate defense to board member Dana Walden against the Federal Investigation between at least March 14, 2017 and June 8, 2018.

(ECF Doc. 140 ["Pretrial Conf. Order"] at p. 3:1 – 4:16.)

## III. ISANA WILL PREVAIL ON ITS CLAIMS FOR BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (BAD FAITH)

Following this Court's two summary judgment rulings, the claims remaining to be tried to the jury are:

- ISANA's breach of contract claim regarding Scottsdale's failure to reimburse ISANA's defense fees and costs incurred between tender and Scottsdale agreeing to appoint defense counsel to ISANA and its board members.

- ISANA's breach of contract claim regarding Scottsdale's failure to reimburse ISANA's defense fees and costs incurred between the USAO's identification of a potential conflict of interest and naming of Mr. Walden as a person of interest and Scottsdale's appointment of separate defense counsel for Mr. Walden.

- ISANA's breach of the implied covenant of good faith and fair dealing (bad faith) claim regarding Scottsdale's conduct with respect to the above breaches.

### A. ISANA's Breach of Contract Claims

Based on little more than the facts already stipulated to by the parties, ISANA will prevail at trial on its claims that Scottsdale breached the Policy. To prove Scottsdale is liable for breach of the Policy, ISANA must establish the following:

1. That ISANA suffered a loss, all or part of which was covered under an insurance policy with Scottsdale;
2. That Scottsdale was notified of the loss as required by the policy; and
3. The amount of the covered loss that Scottsdale failed to pay.

(*See* Judicial Council of California, Civil Jury Instructions ("CACI") 2300)

12

Here, the Policy obligates Scottsdale to provide the Insureds with an immediate and unconflicted defense of the Warrants and Federal Investigation. (Policy at pp. 4, 6, 14-15.)  Moreover, the Policy obligates Scottsdale to pay defense fees and costs incurred in response to the Warrants and Federal Investigation in addition to the policy limits.  (Policy at pp. 6 & 18.)  It is admitted and deemed established that Scottsdale issued ISANA the Policy, under which ISANA and its board members are Insureds.  (ECF No. 140 [Pretrial Conf. Order] at ¶¶ 5(a) and 5(b), p. 3:1-4.)  It is also admitted and deemed established that ISANA tendered the Federal Investigation to Scottsdale no later than February 7, 2017, and that Scottsdale has not made a single payment to ISANA on that claim.  (*Id.* at ¶¶ 5(e), 5(o), and 5(p), pp. 3:15-16 and 4:11-16.)

### 1. Scottsdale Breached the Policy by Failing to Pay ISANA's Defense Fees Incurred between ISANA's Tender and Scottsdale's Acceptance of a Defense

Scottsdale failed to offer a defense immediately upon ISANA's tender and has not compensated ISANA for any of the defense fees ISANA incurred up through the time Scottsdale ultimately agreed to provide a defense.  "The defense duty arises upon tender of a potentially covered claim and lasts until the underlying lawsuit is concluded, or until it has been shown that there is no potential for coverage." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 655 (2005).  "To defend meaningfully, the insurer must defend immediately.  [Citation.]  To defend immediately, it must defend entirely." *Buss v. Superior Court*, 16 Cal.4th 35, 49 (1997).  Liability for costs arises <u>the moment the defense is tendered</u>—it does not matter whether there is ultimately a duty to indemnify. *Montgomery Ward & Co., Inc. v. Imperial Cas. & Indem. Co.*, 81 Cal.App.4th 356, 373 (2000).  "Imposition of an immediate duty to defend is necessary to afford the insured what it is entitled to: the full protection of a defense on its behalf." *Montrose Chem. Corp. of Calif. v. Superior Court*, 6 Cal.4th 287, 295 (1993).

13

Upon tender, the insurer must mount and fund a defense to avoid, or minimize liability.  *Buss*, 16 Cal.4th at 46.  "Once the defense duty attaches, the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered, until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim."  *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081 (1993).  If the duty to defend is extinguished, it is extinguished prospectively and not retroactively—the insurer still had a duty to defend and is liable for those costs.  *See Buss*, 16 Cal.4th at 46; *see also*, *Mulhearn v. Lawyers Title Ins. Corp.*, 2014 WL 213554 (insurer obligated to pay attorneys' fees incurred in the six weeks between tender and acceptance).

Here, ISANA tendered the Federal Investigation to Scottsdale on February 7, 2017, but Scottsdale did not offer a defense to ISANA until March 7, 2017. Scottsdale has argued it was told "there was nothing to do" at the time, but this is not supported by admissible evidence and is in fact contradicted by Scottsdale's own claims notes.  Regardless, it does not excuse Scottsdale's obligations under the Policy.  Scottsdale remains obligated to pay defense fees incurred since tender, and cannot avoid its obligation by manufacturing a basis to delay its own compliance.

ISANA continued to incur defense fees through the time Scottsdale accepted its defense obligations.  "Generally, the insured, as the party seeking relief, carries the burden of proving the amount of costs incurred in defense of an action."  *State v. Pac. Indem. Co.*, 63 Cal.App.4th 1535, 1548 (1998) (citing *Aerojet-General Corp. v. Transport Indemnity Co.*, 17 Cal.4th 38, 64 (1997)).  However, when the insurer is in breach of the policy, the fees incurred by the insured are presumed reasonable and necessary, and the insurer carries the burden of proving they are not.  *Id.* at 1548-49 ("By contrast, in the exceptional case, wherein the insurer has breached its duty to defend, it is the insured that must carry the burden of proof on the existence and amount of the ... expenses, which are then presumed to be reasonable and necessary as defense costs, and it is the insurer that must carry the burden of proof that they are

14

in fact unreasonable or unnecessary.") (quoting *Aerojet-General Corp.*, 17 Cal.4th at 64)) (emphasis added).  In other words, upon a finding of breach by Scottsdale, the full amount of ISANA's fees and costs between the time of tender and Scottsdale's acceptance a month later will be owed without allocation and deduction.

Here, by both the stipulated facts and this Court's prior findings of fact, Scottsdale is unquestionably in breach of the Policy.  It is admitted that Scottsdale was on notice of the Federal Investigation since at least February 7, 2017.  It is further admitted that Scottsdale has not reimbursed ISANA for *any* defense fees incurred since that time.  Under these facts, the fees incurred by ISANA between tender and acceptance of a defense are presumed reasonable and necessary. Scottsdale will be unable to carry its burden of rebutting this presumption, as it has failed to designate an expert witness on the issue of the reasonableness of ISANA's defense fees.  As such, ISANA will prevail in recovering the full amount of defense fees incurred between tender and acceptance at trial.

> **2.     Scottsdale Breached the Policy by Failing to Assign Separate Counsel to Mr. Walden Until Ordered by this Court, and by Failing to Reimburse Celerity for the Related Defense Fees Incurred**

Similarly, ISANA will prevail on the other component of its breach of contract claim based on little more than the stipulated facts and this Court's prior factual findings.  As this Court already found, "as of March 15, 2017, when Defendant received the March 14 USAO Letter, Defendant had a duty to assign separate counsel to Walden."  (ECF No. 118 at 20:1-8.)  As this Court also found, "Walden was entitled to his own separate counsel, not counsel shared with other persons of interest."  (*Id*. at 20:13-18.)  Nevertheless, Scottsdale did not offer Mr. Walden his own separate counsel until *after* this Court ordered it to do so in April 2018.  (ECF No. 140 at ¶¶ 5(l) and 5(m), p. 4:4-8.)  Scottsdale has admitted, without the need for proof, that it "has not reimbursed the defense fees and costs incurred by ISANA in

15

providing a separate defense to board member Dana Walden against the Federal Investigation between at least March 14, 2017 and June 8, 2018." (ECF No. 140 at ¶ 5(p), p. 4:14-16.)

Under these facts, Scottsdale was *per se* in breach of the Policy from at least March 15, 2017 through April 19, 2018, and indeed through June 8, 2018 when Mr. Walden's transition to separate counsel appointed by Scottsdale occurred. As before, because Scottsdale was in breach, all defense fees incurred by ISANA for Mr. Walden's defense during this time period are presumed reasonable and necessary. *Pac. Indem. Co.*, 63 Cal.App.4th at 1548-49; *Aerojet-General Corp.*, 17 Cal.4th at 64. And as before, Scottsdale's failure to designate an expert on the issue of ISANA's defense fees is fatal to its ability to satisfy its burden of rebutting these fees. Accordingly, ISANA will prevail in recovering the full amount of all defense fees incurred in connection with Mr. Walden's defense from March 15, 2017 through June 8, 2018 at trial.

**B.**    **ISANA's Claims for Breach of the Implied Covenant of Good Faith and Fair Dealing (Bad Faith)**

As with its breach of contract claim, ISANA will establish Scottsdale's bad faith in handling ISANA's claims related to the above breaches based on little more than the stipulated facts. To prove bad faith, ISANA must establish the following:

1. That ISANA suffered a loss covered under an insurance policy with Scottsdale;

2. That Scottsdale was notified of the loss;

3. That Scottsdale unreasonably failed to pay/delayed payment of policy benefits;

4. That ISANA was harmed; and

5. That Scottsdale's failure to pay/delay in payment of policy benefits was a substantial factor in causing ISANA's harm.

16

(CACI 2331)

### 1. Scottsdale's Refusal to Reimburse ISANA for Defense Fees Incurred since Tender Constitutes Bad Faith

It is undisputed that Scottsdale's defense obligations commenced immediately when ISANA tendered, and that Scottsdale has failed and refused to reimburse ISANA for any defense fees incurred between ISANA's tender and Scottsdale's acceptance of the defense. Over two years have passed without *any* effort on Scottsdale's part to reimburse ISANA for these covered losses. Instead, Scottsdale has blamed its own insured for Scottsdale's failure to appoint defense counsel earlier. ISANA is confident a jury will agree that Scottsdale's unreasonable failure and/or delay in paying ISANA any of its defense fees and costs amounts to bad faith.

As a result of Scottsdale's unreasonable failure to pay ISANA policy benefits, ISANA was forced to divert resources from its schools simply to pay the defense for which Scottsdale was obligated under the Policy. This had reverberating effects throughout ISANA's business, including the closing of one of its schools. ISANA is confident a jury will hold Scottsdale accountable for all the harm caused by its unreasonable failure to pay Policy benefits.

### 2. Scottsdale's Refusal to Appoint Separate Counsel to Mr. Walden and Reimburse ISANA for Any Related Defense Fees Constitutes Bad Faith

Likewise, Scottsdale's failure and refusal to offer Dana Walden separate defense counsel for *over a year* was similarly unreasonable. Indeed, during that period of time Scottsdale actively argued it had no obligation to do so, and scoffed at ISANA's repeated requests for separate counsel for Mr. Walden.

Moreover, Scottsdale's failure to reimburse any defense fees incurred by ISANA on behalf of Board Member Dana Walden is similarly unreasonable. Again, this had reverberating effects throughout ISANA's business, as described above. The jury will be very interested in hearing how prejudicial an insurer's refusal to

17

honor its coverage obligations to is insured can be—particularly where that refusal results in reducing resources and programs intended to benefit  students in some of Los Angeles' most underserved communities.

## IV.   SCOTTSDALE'S PROFFERED DEFENSES ARE UNAVAILING

Although Scottsdale's answer recites seventeen affirmative defenses, Scottsdale's Memorandum of Contentions of Fact and Law reduces this list to nine affirmative defenses Scottsdale intends to prove at trial:  (1) mitigation of damages; (2) Policy terms; (3) condition precedents; (4) exclusion for "punitive damages" under the Policy's "Loss" exclusion; (5) the Policy's "prior written consent" provision; (6) equitable doctrines of waiver, estoppel, and unclean hands; (7) Scottsdale "acted reasonably and in good faith"; (8) ISANA's defense costs incurred were "neither 'reasonable' nor 'necessary' fees, costs, and expenses"; and (9) genuine dispute as to coverage.  Scottsdale will not be able to carry its burden of establishing any of these alleged affirmative defenses.

### 1.   Mitigation of Damages

Scottsdale has failed to articulate how ISANA has not mitigated its damages in this case.  ISANA was forced to fund its defense and the defense of Mr. Walden for the Federal Investigation following Scottsdale's delay in accepting a defense for ISANA, delay in appointing separate counsel for Mr. Walden and Scottsdale's admitted refusal to reimburse any defense fees.  It is undisputed that Scottsdale has failed and refused to reimburse ISANA for these fees.

ISANA's attorney fee expert has opined that the fees incurred by ISANA were reasonable and necessary in the defense of the Federal Investigation.  Scottsdale has not designated an expert to offer contradictory expert opinion.  Moreover, ISANA's and Mr. Walden's decision to waive the potential conflict up until such time when Scottsdale finally honored its coverage obligations and offered Mr. Walden a separate defense actually mitigated damages, as it would have been more costly for

multiple firms to duplicate efforts if ISANA had retained separate counsel for Mr. Walden during that period of time.

### 2. **Policy Terms**

Scottsdale has not articulated how invoking the terms of the Policy amounts to an affirmative defense to ISANA's claims. As stated above, and recognized by this Court in its past summary judgment rulings, Scottsdale was obligated under the Policy to provide a defense for the Federal Investigation to ISANA and Mr. Walden separately. Scottsdale's vague reference to various terms of the Policy in the abstract is insufficient to excuse Scottsdale's coverage obligations.

### 3. **Condition Precedents**

Again, Scottsdale alleges generally that ISANA has failed to satisfy conditions precedent, but fails to identify any such condition precedent. To the extent any such condition precedent is encompassed within another affirmative defense asserted by Scottsdale, it will be addressed in the corresponding section herein.

### 4. **"Loss" Exclusion for Punitive Damages**

Scottsdale's Memorandum again cites to the entire "Loss" exclusion under the Policy, despite Scottsdale having on numerous occasions represented that it has reserved only as to the "Punitive Damages" component of the "Loss" exclusion. As noted by this Court in its first summary judgment ruling on ISANA's prior *Cumis* claim:

> Defendant clarified in a June 2, 2017 letter to [ISANA] that this reservation extends only to "the lack of coverage for punitive damages." Defendant has therefore expressly withdrawn its defense pursuant to this definition to the extent it is predicated on the exclusion for "matters uninsurable under the laws."

(ECF No. 50 at p. 16:16-22.)

Scottsdale's continued attempt to invoke the entirety of the "Loss" exclusion is contrary to its past representations, which this Court relied upon in denying ISANA's *Cumis* claim. It is further indicative of Scottsdale's bad faith.

ISANA has sought to exclude via motion *in limine* (No. 4 ) any evidence relating to this exclusion.  To the extent Scottsdale intends to rely on the "Loss" exclusion for "punitive damages," it is entirely inapplicable here, as ISANA is seeking reimbursement of defense costs—not punitive damages.  The underlying Federal Investigation does not concern punitive damages.

### 5.   "Prior Written Consent" Policy Provision

To the extent Scottsdale contends ISANA was required to obtain its consent prior to incurring recoverable defense fees, Scottsdale's arguments fail for a number of reasons.  Preliminarily, Scottsdale's concurrent breach of the Policy waives any such requirement as a matter of law.  See *Jamestown Builders, Inc. v. Gen. Star Indem. Co.*, 77 Cal. App. 4th 341, 346 (1999); *Gribaldo, Jacobs, Jones & Assocs. v. Agrippina Versicherunges A.*, 3 Cal. 3d 434, 449 (1970).

Moreover, the Policy prohibited Scottsdale from "unreasonably" withholding consent to fees and costs.  Scottsdale has failed to provide any basis, much less a reasonable one, for its refusal to appoint counsel sooner for ISANA and Mr. Walden.  As such, it was entirely reasonable and necessary for ISANA to incur defense fees and costs to defend against the Federal Investigation at all times prior to Scottsdale honoring its coverage obligations.

### 6.   Waiver, Estoppel, and Unclean Hands

Scottsdale fails to articulate how any of these equitable doctrines preclude ISANA's claims here.  It is undisputed that Scottsdale failed to offer a defense to ISANA prior to March 7, 2017, and failed to offer a separate defense to Mr. Walden until April 2018.  At no time did ISANA intentionally give up a known right with respect to its claims to recover defense fees incurred in connection with each, and in fact has actively pursued these claims throughout this lawsuit.  Consequently, ISANA is similarly not estopped from continuing to pursue these claims at trial.

Finally, Scottsdale's reliance on the unclean hands doctrine is unintelligible, and Scottsdale offers no explanation as to its applicability here.

20

### 7.   Scottsdale's Alleged "Reasonable and Good Faith" Conduct

Scottsdale has asserted as an "affirmative defense" that it "acted reasonably and in good faith in handling [ISANA's] claim."   First, this is not an affirmative defense.   Second, it is directly contrary to Scottsdale's unreasonable failure and delay in appointing defense counsel sooner for ISANA and Mr. Walden, as well as Scottsdale's unreasonable failure to reimburse ISANA for corresponding defense fees incurred, as set forth in greater detail above.

### 8.   ISANA's Reasonable and Necessary Fees

Scottsdale argues the unreimbursed defense fees incurred by ISANA were neither reasonable nor necessary.   Scottsdale will not be able to carry its burden as to either descriptor.   ISANA's witnesses will testify as to the reasonable and necessary nature of the defense fees incurred to defend against the Federal Investigation—fees ISANA was forced to incur because Scottsdale failed to honor its coverage obligations.   ISANA's attorney fee expert will also offer testimony as to the reasonable and necessary nature of these fees.   In contrast, Scottsdale has failed to designate an expert on the issue of ISANA's defense fees, and will not be able to carry its burden at trial to rebut the presumptive reasonableness and necessity of all defense fees without allocation or deduction.   See *Pac. Indem. Co.*, 63 Cal.App.4th at 1548-49; *Aerojet-General Corp.*, 17 Cal.4th at 64.

ISANA has sought to exclude testimony from Scottsdale's expert regarding the defense fees and costs via motion *in limine* (No. 1) as Scottsdale failed to designate an expert witness to testify as to the reasonableness of ISANA's defense fees and costs, further negating the viability of this affirmative defense

### 9.   Genuine Dispute Doctrine

Finally, Scottsdale has alleged there was a "genuine dispute" as to coverage for Plaintiff's claims.   Again, Scottsdale will be unable to carry its burden.   First, Scottsdale itself has acknowledged a defense obligation owed to ISANA for the Federal Investigation, despite refusing to reimburse ISANA for defense fees incurred

from the time ISANA tendered to when Scottsdale first offered to appoint defense counsel

Moreover, as this Court conclusively held, "as of March 15, 2017, when Defendant received the March 14 USAO Letter, Defendant had a duty to assign separate counsel to Walden," and "Walden was entitled to his own separate counsel, not counsel shared with other persons of interest." (ECF No. 118 at 20:1-8 and 20:13-18.)  There is no "genuine dispute" as to Scottsdale's abdication of its coverage obligations here.

# V.    **CONCLUSION**

The facts of this case and the applicable law relative thereto support a finding in favor of ISANA on all claims.  ISANA is confident the jury will find Scottsdale liable for breach of contract and breach of the implied covenant of good faith and fair dealing (bad faith), and award ISANA damages commensurate with all harm caused by Scottsdale's breaches.


DATED:  May 28, 2019            PROCOPIO, CORY, HARGREAVES &
                                SAVITCH LLP


                                By:  */s/ Cecilia O. Miller*
                                     Cecilia O. Miller
                                     Ryan C. Caplan
                                     William A. Smelko
                                     Attorneys for Plaintiff
                                     ISANA, formerly known and having
                                     appeared as Celerity Educational Group